**Nakia Corneal DILLARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 95–SC–843–MR.

Supreme Court of Kentucky.

June 17, 1999.

Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

A.B. Chandler, III, Attorney General, Frankfort, KY, Kent T. Young, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

COOPER, Justice.

Appellant, Nakia Corneal Dillard, was convicted in the Christian Circuit Court of the kidnapping, robbery, and attempted murder of Steve Marquess, and of the kidnapping of Tracey Geordan. The jury deadlocked on whether he was also guilty of the attempted rape and murder of Geordan. Appellant was sentenced to twenty years imprisonment for each of his convictions of the offenses committed against Marquess. The sentences were ordered to be served consecutively for a total of sixty years. Sentencing for the conviction of kidnapping Geordan was reserved until a retrial of Appellant's indictments for attempted rape and murder. Appellant appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting seven claims of error: (1) failure to excuse three jurors for cause; (2) failure to hold a hearing with respect to an alleged *Batson* violation, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (3)

introduction of inflammatory photographs; (4) failure to grant funds for an expert to assist in preparation of his defense; (5) impairment of his right to present a complete defense; (6) failure to grant a mistrial after comment was made on his failure to testify; and (7) failure to impose a sentence for his conviction of kidnapping Tracey Geordan. The facts are these:

On the evening of July 11, 1994, Marquess and Geordan were cleaning the parking lot of the Brickyard Plaza Shopping Center in Hopkinsville. Marquess had changed clothes in a nearby tool shed, where he had left a pair of pants in which he had placed his wallet and his watch. Sometime after 10:30 p.m., Marquess and Geordan were approached by Appellant and Ernest Arnaze Rogers. Appellant admitted in a subsequent videotaped confession that he was desperate for money to pay off debts, and that he and Rogers had agreed that Appellant would rob Marquess and that Rogers would remove Geordan from the scene so that she would not be a witness. Appellant pointed a .380 Lugar handgun at Marquess and demanded his money. Marquess replied that his money was in the pocket of his pants which were in the shed. When Appellant entered the shed to get the money, Marquess ran from the scene. Appellant fired three shots at Marquess and two more into the air. Marquess, however, escaped.

Meanwhile, Rogers had led Geordan away from the scene. Appellant claimed in his videotaped confession that when he emerged from the shed with Marquess's pants and wallet, he heard Geordan scream, then heard two shots, the first of which "sort of echoed," but the second of which "just went 'pap.' " Geordan died of a contact gunshot wound to the head. When her body was found, her shirt and brassiere were pulled up, exposing her breasts, and her shorts and underwear were pulled down toward her knees. Marquess's pants were found on Geordan's body and his wallet was found nearby. Appellant explained that he had removed thirty dollars from Marquess's wallet and was fleeing the scene when he stumbled over Geordan's dead body. Startled, he dropped Marquess's pants and wallet and continued to run. According to Appellant, Rogers later admitted to him that he killed Geordan because she was trying to escape and demanded to know why Appellant had not killed Marquess. Neither Appellant nor Rogers testified at their joint trial. However, Appellant's videotaped confession was played to the jury in redacted form.

## I. CHALLENGES FOR CAUSE.

■ Appellant asserts error in the failure to excuse three jurors for cause. Two of the three jurors expressed bias only against Rogers. Since Appellant and Rogers had antagonistic defenses (each claimed the other murdered Geordan), the failure to strike these two jurors could not have prejudiced Appellant.

■ The third juror was a fireman; and the victim, Marquess, was a captain at the same fire department. However, the two worked different shifts and the juror claimed to have never discussed the case with Marquess. The juror also knew some of the police officers who testified at trial, but denied ever discussing the case with any of them. He asserted that he had formed no opinions with respect to the guilt or innocence of either defendant and could be fair to both sides. In Sanders v. Commonwealth, Ky., 801 S.W.2d 665 (1990), cert. denied, 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991), no implied bias was attributed to a juror who had a passing acquaintance with the victim and a passing familiarity with the reported circumstances of the case. In Copley v. Commonwealth, Ky., 854 S.W.2d 748, 750 (1993), we found no implied bias in a juror who was a fellow employee of the victim. The trial judge did not err in refusing to excuse these three jurors for cause.

## II. PEREMPTORY STRIKES.

Appellant asserts error in the trial judge's refusal to hold a Batson hearing, Batson v. Kentucky, supra, when the Com-

monwealth used its peremptory strikes to excuse seven African–Americans from the jury. Appellant and Rogers are African–Americans. Marquess is Caucasian, as was Geordan.

Jury selection was completed and the jury was sworn on the afternoon of July 19, 1995. The remainder of the panel was then discharged. Appellant did not raise his *Batson* objection until the next day. A *Batson* objection which is not raised before the swearing of the jury and the discharge of the remainder of the panel is untimely. *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988), *cert. denied*, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989); *cf. Commonwealth v.. Snodgrass*, Ky., 831 S.W.2d 176 (1992). Thus, the issue was not preserved and no hearing was required.

### III. PHOTOGRAPHS.

The Commonwealth introduced two photographs of Geordan's body. The first depicted the body as it was discovered by police with Marquess's pants covering her exposed breasts and his wallet on the ground nearby. The second photograph was taken after the pants and wallet were removed. Appellant asserts that the second photograph was inflammatory and should not have been admitted, because it did not accurately reflect the crime scene and the condition of Geordan's body at the time it was discovered by the police. However, if the jury believed Appellant's version of how the pants and wallet came to be at the same location as Geordan's body, the second photograph accurately depicted the crime scene as it existed when Appellant stumbled over the body and deposited Marquess's pants and wallet at the scene. Both photographs were probative and admissible. *Sanders v. Commonwealth, supra*, at 676; *Wager v. Commonwealth*, Ky., 751 S.W.2d 28, 31 (1988); *Harper v. Commonwealth*, Ky., 694 S.W.2d 665, 670 (1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 106–07 (1980), *overruled on other grounds, Payne v. Commonwealth*, Ky., 623 S.W.2d 867, 870 (1981).

### IV. REQUEST FOR FUNDS.

This issue usually arises pursuant to a pretrial motion for funds to hire an expert witness to assist in the presentation of the defense. *E.g., Binion v. Commonwealth*, Ky., 891 S.W.2d 383 (1995); *Sommers v. Commonwealth*, Ky., 843 S.W.2d 879 (1992). In this case, the issue arose when Melissa Vaughn testified on the last day of the prosecution's case, July 25, 1995, that on the night of Geordan's murder, she was in a car with Rogers and Rogers's mother; that they parked near a rock quarry; that Rogers disappeared in the direction of the quarry for fifteen or twenty minutes; and that when he returned, he was wearing different clothes.

Vaughn's evidence was offered as a possible explanation of why (1) the murder weapon was never found and (2) when Rogers was arrested, no hair or other evidence of physical contact with Geordan was found on his clothing. The police learned of Vaughn's evidence as a result of an anonymous tip received just two days before the trial began. They immediately searched the area around the rock quarry without success. Later, on July 23, 1995, they returned to the quarry with expert divers brought in from out of town. The divers conducted a brief and unsuccessful underwater search for the missing gun, which was aborted because of an approaching storm. Another attempted search could not be scheduled prior to the close of the Commonwealth's case. On July 27, 1995, two days after receipt of this information, Appellant requested a continuance of the trial and funding to hire his own divers to search the quarry for the missing weapon. He posits that Rogers's gun was the murder weapon, thus, proof of its existence would inculpate Rogers as the murderer and thereby exculpate him. The trial judge took these motions under advisement, but never issued a ruling.

It is the duty of one who moves the trial court for relief to insist upon a ruling, and a failure to do so is regarded as a waiver. *Brown v. Commonwealth*, Ky., 890 S.W.2d 286, 290 (1994) (motion to suppress post-arrest statements to police); *Wilkey v. Commonwealth*, Ky., 452 S.W.2d 420, 422 (1970) (motion for a copy of grand jury testimony). But even if the trial court had denied Appellant's motion, such would not have been reversible error. Vaughn did not testify that Rogers had a gun when he left the automobile. It is only speculation that Rogers might have thrown a gun into the rock quarry, or that any gun which might be found in the quarry could be proven to be the murder weapon. The police attempted an underwater search, which, though admittedly abbreviated, was unsuccessful. While we hesitate to refer to this particular request for funds as a "fishing expedition," no better description comes to mind. A denial of a continuance and of funds to conduct an underwater search of the quarry, absent any testimony tending to prove that the murder weapon is in the quarry, would have been neither an abuse of discretion nor a denial of due process of law. *Caldwell v. Mississippi*, 472 U.S. 320, 323, n. 1, 105 S.Ct. 2633, 2637, n. 1, 86 L.Ed.2d 231 (1985); *Simmons v. Commonwealth, supra*, at 395; *Hicks v. Commonwealth*, Ky., 670 S.W.2d 837, 838 (1984), *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984).

## V. IMPAIRMENT OF DEFENSE.

Appellant claims he was deprived of his right to present a complete defense by the redaction of his confession so as to delete Rogers's name before playing the confession to the jury. The redaction was an attempt to comply with the mandate of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The sufficiency of that redaction is the subject of a separate appeal by Rogers from his convictions in this case. Appellant asserts that the redaction impaired his ability to present his complete defense, *i.e.*, proof that Rogers was the person who raped and murdered Geordan. However, the only redaction of Appellant's confession was the erasure of Rogers's name from the audio portion of the videotape whenever his name was mentioned. Appellant's defense that he did not kill Geordan, but only deposited Marquess's pants and wallet near her body after she already had been killed by another, remained intact. The only information missing from the confession was Appellant's identification of Rogers as the killer. Ironically, in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), the United States Supreme Court held that the mere substitution in a non-testifying defendant's confession of blank spaces or the word "delete" in place of the name of a non-confessing codefendant did not satisfy *Bruton, supra*, because the jury obviously knew whose name had been deleted.

> Consider a simplified but typical example, a confession that reads "I, Bob Smith, along with Sam Jones, robbed the bank." To replace the words "Sam Jones" with an obvious blank will not likely fool anyone. A juror somewhat familiar with criminal law would know immediately that the blank, in the phrase "I, Bob Smith, along with [blank], robbed the bank," refers to the defendant Jones. A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank. A more sophisticated juror, wondering if the blank refers to someone else, might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that Jones, not someone else, helped Smith commit the crime.

*Id.*, 523 U.S. at ——, 118 S.Ct. at 1155.

Appellant's reliance on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35

L.Ed.2d 297 (1973) and *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) is misplaced. In *Chambers,* another person, McDonald, who was not charged with the offense, had signed a sworn confession to having committed the murder. He had also made unsworn statements to others in which he admitted being the killer. The defendant was permitted to call McDonald as a witness and to introduce the sworn, written confession. However, McDonald denied committing the murder and recanted the confession, offering a plausible explanation for having originally signed it. Under Mississippi's "voucher" rule of evidence, the defendant was prohibited from thereafter impeaching McDonald, his own witness, either by cross-examination or by use of his prior unsworn statements. Mississippi's hearsay rule did not permit McDonald's prior inconsistent, but unsworn, statements to be used for substantive purposes, and did not contain an exception for hearsay statements against penal interest. *Compare* KRE 801A(a)(1) and KRE 804(b)(3). Thus, the defendant could not rebut McDonald's recantation of his sworn confession and was essentially prevented from presenting his best defense to the charges against him. It was held under those circumstances that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049.

In *Crane v. Kentucky, supra,* the defendant sought to have his confession suppressed as unreliable on the basis that it had been involuntarily obtained. When that failed, he sought at trial to introduce evidence of the circumstances surrounding the confession so as to reduce its credibility in the eyes of the jury. The trial judge suppressed that evidence on the grounds that any decision with respect to the voluntariness of a confession rests solely with the trial judge. The United States Supreme Court reversed, holding that the suppression of that evidence denied the defendant "a meaningful opportunity to

present a complete defense." *Id.,* 476 U.S. at 690, 106 S.Ct. at 2146.

Here, the deletion of Rogers's name from Appellant's confession was not required by a "mechanistic" application of a rule of evidence, but by Rogers's constitutional right to confront the witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution and Section 11 of the Constitution of Kentucky. The confession was introduced by the interrogating officer *as part of the Commonwealth's evidence.* Except for being prohibited from asking the interrogating officer the name of the other person implicated by his own recorded statement, Appellant was not restricted in any manner from cross-examining witnesses or from calling witnesses in his own behalf, including himself. The mere deletion of Rogers's name from Appellant's confession did not deprive him of a meaningful opportunity to present a complete defense.

## VI. COMMENT ON SILENCE.

Appellant asserts it was error for the trial judge to deny his motion for a mistrial when counsel for co-defendant Rogers commented on his silence during closing argument. The gist of Rogers's defense was that it was Appellant who killed Geordan, that Appellant lied in his videotaped "confession," and that the police knew he was lying, for otherwise, they would not have charged Appellant for the murder. That portion of the closing argument of which Appellant complains begins as follows:

They led you to believe that he cooperated with them. Well, he lied to them and he lied to them and he lied to them. You heard the statement. It was one lie after another. Well, we've got a problem with this part of your statement, Nakia. Nakia, this part doesn't make any sense. Nakia you are lying to us about this. Over and over and over again. Well, if ever a person had the golden opportunity to get themselves out of a problem, it was Nakia Dillard,

wasn't it? They arrest him. What is the first thing he asked them? Well, well, not that he didn't do it. What are you arresting me for? I ain't done nothing. I don't know no girl. I ain't been to Brickyard Plaza. Oh, he said those things, but what else does he say? Who do you think was with me that night? Who do you think? Oh, we think it was Ernest Rogers. Oh, oh, you do? Have you talked to Ernest yet? No. Oh, you haven't? Well, I've got some things to tell you. And they tell him, they set it up for him, they say look, just be honest with us, Nakia. That's all you've got to do. Honesty will put you in this witness chair [gesturing] and will put you back there with the Commonwealth's witnesses [gesturing]. That's what honesty will do for you. That's what cooperation will do for you. It won't put you over here with your attorneys. It won't put you over here with Mr. Embry and Ernest Rogers. The truth will put you there [gesturing toward prosecution table] and back there [gesturing toward where prosecution witnesses were seated]. He didn't tell the truth. He didn't cooperate and there he sits right over there. . . .

Appellant's counsel then objected on grounds that counsel was commenting on matters outside the evidence, because Appellant had neither been told that he would be a witness for the prosecution nor been offered a plea agreement. The trial judge admonished the jury that Appellant had never been told that he would be a witness for the Commonwealth. The argument continued:

Ladies and gentlemen, I submit to you, you've heard Mr. Dillard from the video screen and he appeared in that manner for the Commonwealth's case as it was, but he didn't in person, of course.

Appellant's counsel again objected and moved for a mistrial on grounds that counsel for Rogers had commented on his failure to testify. The motion for a mistrial was denied, but the trial judge admonished the jury to "remember, that it's contained in the instructions that a defendant does not have to take the stand and you can draw no inference from that whatsoever. It's a right that we each have. We are not required to testify." The argument then concluded as follows without objection:

Thank you, Your Honor. Ladies and gentlemen, it's obvious that if the truth was Nakia Dillard didn't kill anyone and he just tried to rob somebody and it was a failed attempt, the truth would have been of great benefit to him. He had every opportunity to tell the truth, but he didn't. He lied and he lied and he lied. Why did he do that? The truth would have helped him, if the truth was he didn't do it. Because of that, that's why he had to lie even though the truth is if he didn't do it, it would have helped him. He had to lie, because the truth is that he did it.

Appellant does not assert that any portion of this argument amounted to improper commentary on Appellant's right to remain silent while in custody following his arrest. *See Miranda v. Arizona*, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966). The focus of the closing argument in that respect was not that Appellant failed to give a statement to the police, but that the statement he gave was untruthful. Appellant's claim of error is the denial of his motion for a mistrial after direct reference was made to the fact that he had not testified in person during the trial.

 "In any criminal or penal prosecution, the defendant, on his own request, shall be allowed to testify in his own behalf, *but his failure to do so shall not be commented upon* or create any presumption against him." KRS 421.225 (emphasis added). Violation of this statute can be grounds for reversal of a conviction, *Adams v. Commonwealth*, Ky., 264 S.W.2d 283, 284 (1954), *Bradley v. Commonwealth*, Ky., 261 S.W.2d 642 (1953); and the statutory prohibition applies not only to comments by a prosecutor, but also to comments by counsel for a co-defendant. *Luttrell v. Commonwealth*, Ky., 554

S.W.2d 75, 79–80 (1977). But not every reference to a defendant's failure to testify constitutes reversible error. *E.g., Byrd v. Commonwealth*, Ky., 825 S.W.2d 272, 275 (1992). Here, the reference to the fact that Appellant testified by videotape, but not in person, was brief and isolated. The jury had been instructed as to Appellant's constitutional right not to testify, *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), and the trial judge reminded the jury of that instruction in his admonition following counsel's improper comment. Most importantly, the focus of counsel's argument was to persuade the jury that Appellant was untruthful when he stated in his confession that he did not kill Geordan. In fact, the jury did not convict Appellant of that offense. He was convicted only of the offenses committed against Marquess, *i.e.*, offenses which he admitted that he committed. Thus, the effect of the comment with respect to his failure to testify was harmless beyond a reasonable doubt. RCr 9.24; *Haynes v. Commonwealth*, Ky., 657 S.W.2d 948, 949 (1983).

### VII. FAILURE TO SENTENCE.

Although Appellant was convicted of the kidnapping of Geordan, the jury was not instructed to fix a penalty for that conviction. Appellant did not object to this omission from the penalty phase instructions, but claims on appeal that the trial court has now lost jurisdiction to impose a sentence for that conviction.

Appellant was indicted and convicted of capital kidnapping. The element which elevates kidnapping to a capital offense is that the victim was not released alive. KRS 509.040(2). Obviously, Geordan was not released alive and, unlike murder, a conviction of capital kidnapping does not require that the accused either caused or intended the victim's death. However, in order for capital punishment to be imposed, the Commonwealth must prove an aggravating circumstance. KRS 532.025(2). While murder is not a statutory aggravator for kidnapping and vice-versa, we held in *Harris v. Common-*

*wealth*, Ky., 793 S.W.2d 802, 804–05 (1990), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991), that although the mere fact of the victim's death was not an aggravating circumstance, the fact that the defendant murdered the victim was an "aggravating circumstance otherwise provided by law," KRS 532.025(2), sometimes referred to as a "non-statutory aggravator." Another potential aggravating circumstance in this case was that the capital offense was committed while Appellant was engaged in the commission of robbery in the first degree. KRS 532.025(2)(a)2. Thus, if the Commonwealth could prove that Appellant was engaged in the commission of either murder or first-degree robbery during the course of the kidnapping of Geordan, it could seek a penalty of either death or life in prison without benefit of probation or parole for twenty-five years. Otherwise, the maximum penalty for his conviction of kidnapping would be imprisonment for life. KRS 509.040(2); KRS 532.030(1).

In this case, the jury convicted Appellant of capital kidnapping and first-degree robbery, but deadlocked on whether he was guilty of murder. Appellant will be retried on that charge. Obviously, the Commonwealth could not use the murder of Geordan as an aggravating circumstance at the first trial, because the jury was unable to reach a verdict on that issue. Thus, the prosecutor was required to elect whether to proceed to a sentencing hearing without one of the two potential aggravating circumstances, or reserve sentencing until a final verdict could be reached on the charge of murder. Not surprisingly, the prosecutor elected to reserve sentencing.

There is nothing in our statutory or case law which precludes this procedure. In fact, the result is the same as if the jury had deadlocked during the penalty phase of a capital trial. *See Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672, 681 (1985), *cert. denied*, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). Crimi-

nal Rule 11.04(1) provides that "[a] judgment of conviction shall set forth the plea, the verdict or findings, the adjudication and sentence, . . . ." (Emphasis added.) Since no sentence has been imposed, final judgment has yet to be entered with respect to Appellant's conviction of kidnapping. Thus, this issue is not even ripe for appeal. RCr 12.04(2); *Chambers v. Commonwealth*, Ky., 256 S.W.2d 10 (1953); *Lee v. Commonwealth*, 310 Ky. 69, 219 S.W.2d 990 (1949); *cf. Commonwealth v. Taylor*, Ky., 945 S.W.2d 420, 422 (1997).

■ A defendant is entitled to have his sentence imposed without unreasonable delay, RCr 11.02(1); and there is authority for the proposition that if the delay is unreasonable, the sentencing court may lose jurisdiction. *Green v. Commonwealth*, Ky., 400 S.W.2d 206, 207 (1966); *Wilson v. Commonwealth*, Ky.App., 577 S.W.2d 618, 619 (1979). However, no "unreasonable delay" has occurred in this case. Except for the fact that Appellant effected a stay of proceedings by filing this appeal, he already would have been retried on the unresolved charges and sentenced on his conviction of kidnapping Geordan.

Accordingly, the judgments of conviction and sentences imposed by the Christian Circuit Court are affirmed, and this case is remanded to the Christian Circuit Court for resolution of the remaining issues raised in the indictment.

All concur.