Michael Merrall SHEPHERD,
Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–SC–000450–MR.

Supreme Court of Kentucky.

Feb. 21, 2008.

As Modified on Denial of Rehearing
May 22, 2008.

Fred E. Peters, John Lindsay Tackett, Lexington, KY, for Appellant.

Jack Conway, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Frankfort, KY, for Appellee.

Opinion of the Court by Justice ABRAMSON.

Michael Shepherd appeals as a matter of right from a May 25, 2006 Judgment of the Fayette Circuit Court convicting him, in accord with the jury's verdict, of intentional murder, first-degree robbery, and tampering with physical evidence. Following his conviction, Shepherd was sentenced to Life without the Benefit of Probation or Parole for twenty-five years in the state penitentiary. In the joint trial

of Michael Shepherd and Robert Miller, the Commonwealth alleged and the jury found that on the evening of September 15, 2004, Michael Shepherd, Robert Miller, and Patrick Cook robbed eighteen-year-old Megan Liebengood outside of her Lexington apartment. When Liebengood refused to get into the trunk of her car, Shepherd fatally shot her in the head. Shepherd now contends that the trial court erred by (1) not granting his motion for a separate trial; (2) admitting Elisha Epps' prejudicial testimony; (3) allowing the Commonwealth to mention unfairly prejudicial evidence during its closing argument; (4) not granting his motion for a mistrial after a police sergeant testified about Shepherd's prior bad conduct; (5) denying his motion to strike certain jurors and his motion for a mistrial after the Commonwealth tainted the jury pool; (6) failing to suppress Shepherd's taped police interview; (7) not excluding the penalty of life without the possibility of parole as a sentencing consideration; (8) allowing parts of Tim McCann's police interview to be entered into evidence and read to the jury; and (9) denying his motion for a new trial after the Commonwealth withheld Devan Jones's potentially exculpatory police interview. Although we agree with Shepherd that the trial court erred in including life without the possibility of parole in its sentencing instructions, we conclude that this error was harmless. Finding that Shepherd's second and third arguments were not preserved for appellate review and that the trial court did not commit reversible error with respect to Shepherd's other claims, we affirm.

### RELEVANT FACTS

On September 15, 2004, Michael Shepherd, Robert Miller, and Patrick Cook were "hanging out" on the corner of Woodhill and Codell Drive, near the Ashford Place Apartments in Lexington, drinking and smoking marijuana. Cook and Miller, who had grown up together, shared an Ashford Place apartment with Elisha Epps, who is Cook's cousin and the mother of Miller's child. Both Shepherd and Miller were sixteen years old at this time, while Cook was seventeen. At some point during the afternoon, Miller and Shepherd agreed that they needed some money and should "hit a lick," meaning find someone to rob. Later in the evening, Miller went into his apartment and retrieved his revolver and a holster. Shepherd, who wanted to hold the gun, got a belt, put the holster on, and placed the gun in the holster. Cook, who was the only eyewitness to testify at trial, stated that Shepherd was carrying the gun when the three-some entered the English Manor apartment complex. After walking around the parking lot for awhile, the three boys saw eighteen-year-old Liebengood unloading groceries from her car and decided to rob her. They sneaked up on Liebengood, and Shepherd ordered her to give him her money. Liebengood responded that she had no money. Miller then found Liebengood's purse in her car and took it. Next, Shepherd ordered Liebengood to give him her keys and get in the trunk of her car. After Liebengood refused, Miller grabbed her arm and struggled with her at the edge of her trunk. Then, Shepherd hit Liebengood in the face and she fell to the ground. Cook testified that things were getting out of hand at this point so he started to walk away toward the grass. Before leaving, however, Cook saw Shepherd standing over Liebengood, pointing the gun down at her, and heard Shepherd ask if he "should shoot this bitch?" Cook stated that he then saw Shepherd shoot Liebengood. After seeing two shots, Cook ran away and headed back toward his and Miller's apartment. Shepherd and Miller also fled the scene after the shooting.

Elisha Epps testified at trial that when Miller returned to their apartment, he seemed upset. After asking him what was wrong, Miller replied, "Your boy Mike [Shepherd] is crazy." Elisha then helped Miller get rid of Liebengood's purse by throwing it over the fence behind their apartment. Elisha also testified that when Shepherd returned to the apartment, he still had the holster in his hand, was wiping it with his shirt, and kept saying, "I killed that white bitch."

The next day, on September 16, 2004, the police arrested Shepherd and brought him to the police station for questioning. Shepherd first denied knowing anything about the murder. Then, he blamed the shooting on Josh Champagne, which Shepherd later admitted doing because he did not like Josh. Eventually, Shepherd confessed to the police that he and Cook were the ones who tried to put Liebengood into her trunk, but she was fighting and screaming and would not go in the trunk. Shepherd stated that it was Miller who then shot the victim. Shepherd also admitted to throwing both the gun and the keys to Liebengood's car in a dumpster on the way back to Miller's apartment.

The following day, Cook and Miller were also brought in for questioning and subsequently arrested. On December 7, 2004, Shepherd, Miller, and Cook were indicted for murder and first-degree robbery. Before the trial began, Cook pled guilty to the first-degree robbery charge and agreed to testify at trial, naming Shepherd as the shooter. Cook was eventually sentenced to ten years in prison for the robbery and the murder charge against him was dismissed. The joint trial of Miller and Shepherd began on March 6, 2006, and lasted approximately two weeks. At trial, the Commonwealth introduced the statements Miller and Shepherd had given to the police shortly after the offense, each of which was redacted to eliminate any refer-

ence to the other defendant. Neither defendant testified at trial nor put forth a defense after the close of the Commonwealth's case. Instead, in their respective closing arguments, each defendant admitted to being present during the robbery, but contended that his co-defendant committed the murder.

The jury found Shepherd guilty of intentional murder, first-degree robbery, and tampering with physical evidence, while the jury found Miller guilty of complicity to murder, complicity to first-degree robbery, and tampering with physical evidence. On March 25, 2006, in accordance with the jury's recommendation, the Fayette Circuit Court sentenced Shepherd to life without the possibility of parole for twenty-five years for the intentional murder, twenty years for the robbery, and five years for the tampering conviction. This appeal followed.

## ANALYSIS

### I. The Trial Court Did Not Err in Denying Shepherd's Motion for a Separate Trial.

On March 1, 2006, Shepherd filed a written motion with the trial court to sever his and Miller's joint trial, arguing that he was unduly prejudiced by both his and Miller's redacted statements. The trial court, however, denied his motion for a separate trial, correctly noting that conflicting versions of what happened "is a reason for rather than against a joint trial." *Caudill v. Commonwealth,* 120 S.W.3d 635, 651 (Ky.2003). On appeal, Shepherd argues that this denial resulted in numerous trial court errors, the cumulative effect of which exposed Shepherd to undue prejudice, ultimately affecting the outcome of the trial. We disagree.

We review a trial court's decision to deny a motion for a separate trial for abuse of discretion. *Schrimsher v. Com-*

*monwealth,* 190 S.W.3d 318, 323 (Ky. 2006). Although a trial court has broad discretion over this matter, the court is required to sever a joint trial if the defendant shows, in a pretrial motion, that he will be unduly prejudiced by the joinder. RCr 9.16; *Humphrey v. Commonwealth,* 836 S.W.2d 865, 868 (Ky.1992). The basis of Shepherd's pretrial severance motion was twofold: first, he argued that his own redacted statement prevented him from presenting a complete defense; second, Shepherd stressed that Miller's redacted statement unerringly inculpated him as the shooter. After reviewing the trial court record and applicable law, we find that both of Shepherd's arguments are without merit. Therefore, we affirm the trial court's decision to deny Shepherd's severance motion.

We disagree with Shepherd's first argument that the redaction of his own statement warranted a severance. When the Commonwealth introduced Shepherd's police statement, which was read by Detective Schoonover, the trial court correctly redacted all references to Miller. Shepherd contends that this redaction prevented him from being able to name Miller as the shooter, thus hindering his ability to present a complete defense. However, this Court has held that merely deleting a non-testifying co-defendant's name from the appellant's confession does not prevent the appellant from being able to present a complete defense. *Dillard v. Commonwealth,* 995 S.W.2d 366, 372 (Ky.1999). As in *Dillard,* nothing restricted Shepherd in his joint trial from cross-examining Detective Schoonover, calling his own witnesses, or testifying on his own behalf. *Id.* Even though Shepherd chose not to put forth a defense at trial, that does not negate the fact that he had ample opportunity to do so. Therefore, Shepherd was not prejudiced from the joint trial in this regard.

Shepherd also claims that he was unduly prejudiced by the joint trial because Miller's redacted statement expressly implicated him as the shooter. The relevant part of Miller's confession that was presented to the jury is as follows:

Miller: So uh, she, so she screamed a little. So me and Pat [Cook], we started running, you feel me. And then we looks back ... I just turned around and started running again, you see. And then all I heard was gunshots.

Det. Schoonover: How many shots did you hear? Miller: Three or Four.

In *Bruton v. U.S.,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), the Supreme Court held that in a joint trial, the use of a non-testifying co-defendant's confession that "expressly implicated" the other defendant constitutes a violation of the Confrontation Clause of the Sixth Amendment. In accordance with *Gray v. Maryland,* 523 U.S. 185, 195, 118 S.Ct. 1151, 1156, 140 L.Ed.2d 294 (1998) and *Stanford v. Parker,* 266 F.3d 442, 457 (6th Cir.2001), this Court has extended slightly the protections of *Bruton,* holding that redacted confessions which merely delete the name of the other defendant or insert the phrase "other party" or "deleted" also constitute a *Bruton* violation because the statements still facially incriminate the co-defendant. *Barth v. Commonwealth,* 80 S.W.3d 390, 395 (Ky.2001). However, in Shepherd's case, when the trial court redacted Miller's statement, it did not simply delete Shepherd's name or replace his name with "the other party." Rather, Miller's redacted statement, on its face, neither refers to Shepherd nor implicates him in the shooting of Liebengood. Miller's redacted statement does, however, link Shepherd to the murder when it is heard in light of the other evidence introduced against Shepherd at trial.[1] The Supreme

---

1. Before Miller's redacted statement was read to the jury, Patrick Cook had already testified

Court addressed this type of redacted confession in *Richardson v. Marsh*, 481 U.S. 200, 202, 107 S.Ct. 1702, 1704, 95 L.Ed.2d 176 (1987), holding that when the defendant is "linked to the confession by evidence properly admitted against him at trial," there is no Confrontation Clause violation if the confession is redacted to eliminate all references to the defendant's existence. Because Miller's statement never referred to Shepherd and only incriminated him when viewed in light of the other evidence, no *Bruton* violation occurred.

Furthermore, even if Miller's redacted statement is viewed as being prejudicial towards Shepherd, a joint trial that utilizes an improperly redacted statement "is not reversible error where the proof against the nonconfessing codefendant is so overwhelming that no possible prejudice resulted." *Cosby v. Commonwealth*, 776 S.W.2d 367, 370 (Ky.1989), overruled on other grounds by *St. Clair v. Roark*, 10 S.W.3d 482, 487 (Ky.1999). In this case, the evidence presented to the jury that implicated Shepherd as the shooter included: Cook testified that he saw Shepherd shoot Liebengood; Elisha Epps testified that she saw Shepherd wiping down the holster after the shooting and that Shepherd told her he had "killed that white bitch;" Tim McCann testified that he recalled telling the police that Shepherd had shot Liebengood; Jolisa Jones, Heather Pratt, and Arlene Hill testified that Shepherd was carrying the gun in a holster prior to the robbery; and Shepherd admitted to throwing the gun in a dumpster after the shooting. Due to the ample proof in this case that Shepherd shot Liebengood, Miller's redacted statement did not unduly prejudice Shepherd and the trial court's decision to deny Shepherd's motion for a sepa-

rate trial did not amount to reversible error.

Shepherd argues that he was further prejudiced by the joint trial because one of his statements was so heavily redacted that it confused the jury and because the Commonwealth referred to improper evidence in its closing argument. These assertions arose after the trial court denied Shepherd's motion for a separate trial and are irrelevant to whether the court erred in denying the pretrial severance motion. In addition, Shepherd did not object to either claim of error at trial, rendering these issues not properly preserved for appellate review. In short, the trial court did not err in denying Shepherd's motion for a separate trial.

## II. Shepherd Did Not Object to Elisha Epps's Testimony At Trial and Thus His Claim of Error Is Not Preserved For Appeal.

During trial, Elisha Epps, who lives with both Cook and Miller and is the mother of Miller's child, testified for the Commonwealth. On direct examination, Elisha testified that after Miller returned to their apartment on the night of the shooting, Miller told her, "Your boy Mike [Shepherd] is crazy." Shepherd did not object to this testimony at trial. Rather, after Elisha made this statement, the Commonwealth asked to approach the bench, where it requested that the court tell Elisha not to discuss what Miller or Cook had said to her about Shepherd. Shepherd's counsel agreed, the court instructed Elisha accordingly, and the questioning resumed. Shepherd now argues that because this testimony inculpated him in the murder of Liebengood, it violates the prohibition in *Bruton*, 391 U.S. at 131,

that as he walked away from the scene, Shepherd was standing over Liebengood holding

the gun.

88 S.Ct. at 1625, and justifies the grant of a new trial. Although this testimony may have been prejudicial towards Shepherd, he neither objected to this statement at trial nor moved for a mistrial after its admission. Therefore, this claim was not properly preserved for appellate review. RCr 9.22; *Edmonds v. Commonwealth,* 906 S.W.2d 343, 346 (Ky.1995).

Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant. See *Thomas v. Commonwealth,* 153 S.W.3d 772, 782 (Ky. 2004); *Bray v. Commonwealth,* 177 S.W.3d 741, 752 (Ky.2005). Although Shepherd did not request palpable error review of this argument in his original brief, in the first section of his reply brief, Shepherd "ask[ed] this Court to analyze each failure of Shepherd's trial counsel to object to the errors found on appeal as palpable errors subject to review under RCr 10.26." Despite this cursory request, in the section of his reply brief where Shepherd specifically discussed Elisha Epps's testimony, he neither mentioned palpable error nor cited to RCr 10.26. Rather, it appears that Shepherd intended for the broad request made in the first section of his reply brief to cover all instances of unpreserved errors without specifically stating which individual errors amounted to palpable error under RCr 10.26 or how they rose to manifest injustice. We find that such a general request is not adequate to invoke palpable error review under RCr 10.26. Therefore, having determined that Shepherd failed to argue specifically that Elisha Epps's testimony constituted palpable error and that his vague request did not constitute a sufficient request for review under RCr 10.26, we decline to address this argument on appeal.

## III. Shepherd Did Not Object to Any Part of the Commonwealth's Closing Argument and Thus His Claim of Error Is Not Preserved For Appeal.

During the Commonwealth's closing argument, the prosecutor reminded the jury about Elisha Epps' testimony, stating "You heard Epps also say that when Miller came home, he said 'Shep's crazy' or 'Mike's crazy.'" No objection was made after this remark or at any point during the Commonwealth's closing argument. Shepherd now argues that the Commonwealth committed reversible error by referring to inadmissible evidence in its closing argument that the trial judge had already excluded. Since Shepherd did not object to this conduct at trial, this argument is not preserved for appellate review. RCr 9.22; *Edmonds,* 906 S.W.2d at 346. However, as mentioned above, even though no request for palpable error was made in Shepherd's original brief, he did make a general request for palpable error in his reply brief. Nonetheless, in the particular section of his reply dealing with the Commonwealth's closing argument, Shepherd neither mentions "palpable error" nor cites to RCr 10.26. Applying the same rationale as above, since Shepherd never specifically requested that the Commonwealth's statement in its closing argument be reviewed for palpable error and never specifically argued that this error be reviewed under RCr 10.26, this Court will not engage in such review on appeal.

## IV. Sergeant Fleischer's Testimony About Shepherd's Prior Conduct Was Not Unduly Prejudicial and Did Not Establish Manifest Necessity For A Mistrial.

During its case in chief, the Commonwealth called Sergeant Dan Fleischer, who was one of Shepherd's arresting officers. After the prosecutor asked Fleischer what occurred on the day of Shepherd's

arrest, Fleischer gave a lengthy description of locating Shepherd on the steps of an Ashford Place apartment and effectuating his arrest. During this narrative, Fleischer made several prejudicial remarks, including that his unit was originally dispatched to Ashford Place Apartments for a narcotics complaint, in which one of the subjects of the complaint was Michael Shepherd; he recognized Shepherd through other contact he had had with him; and he thought Shepherd might be a flight risk because he had previously run from officers. Fleischer went on to describe how when he and the other officers attempted to arrest Shepherd, Shepherd slipped between them and ran off. Shepherd led the officers on a chase through the apartment complex, over fences, and onto an adjoining street, where Shepherd was finally apprehended. No objections were made while Fleischer described these events. However, at the conclusion of Fleischer's narrative, Shepherd's counsel approached the bench, objected to Fleischer's testimony, and moved for a mistrial. The trial court denied Shepherd's motion for a mistrial, but offered to admonish the jury. Shepherd's counsel denied the court's offer, arguing that an admonition would only highlight the prejudicial statements. Shepherd's counsel did, however, request an admonition to the witness outside of the presence of the jury. At this point, the trial court called Fleischer to the bench and instructed him not to refer to any other investigations involving the defendants, any prior contacts with the defendants, or that either defendant was seen as a flight risk. After this instruction, the parties did not ask Fleischer any more questions, and he was dismissed.

The parties discussed this issue for a second time the following morning, where again, Shepherd's counsel declined the court's offer to admonish the jury and the trial court denied Shepherd's motion for a mistrial. In its denial, the trial court noted that Fleischer's remarks were insignificant compared to the other evidence presented against Shepherd, *i.e.,* that he regularly used drugs and alcohol, he did in fact run from the police on the day he was arrested, he carried the gun that killed the victim, he discussed whether to kill the victim, and he threw the murder weapon in a dumpster after the shooting. Shepherd now contends that this denial constituted reversible error, arguing that Fleischer's remarks were extremely prejudicial, the prejudice could not have been cured through an admonition, and a mistrial was warranted.

■ A trial court's decision to grant or deny a mistrial will not be disturbed on appeal unless an abuse of discretion is shown. *Neal v. Commonwealth,* 95 S.W.3d 843, 852 (Ky.2003). It is well-established that before granting a mistrial, the trial court must find that there is a "manifest necessity" for such an extreme remedy. *Skaggs v. Commonwealth,* 694 S.W.2d 672, 678 (Ky.1985), *habeas corpus granted on other grounds by Skaggs v. Parker,* 235 F.3d 261, 275 (6th Cir.2000). In order to constitute manifest necessity, the alleged error must be so severe that it results in an incurable amount of prejudice and precludes the defendant from having a fair and impartial trial. *Bray,* 177 S.W.3d at 752. We agree with the trial court that in light of the other evidence presented against Shepherd, Fleischer's testimony was not devastatingly prejudicial and did not prevent Shepherd from having a fair and impartial trial.

■ Fleischer first testified that he had been dispatched to the Ashford Place Apartments in response to a narcotics complaint. However, prior to Fleischer's testimony, Patrick Cook had testified that he, Miller, and Shepherd were smoking marijuana and drinking alcohol on the afternoon Liebengood was killed. Therefore, since the Commonwealth had al-

ready presented evidence to the jury that Shepherd smoked marijuana, he was not unduly prejudiced by Fleischer's remark. Fleischer also stated that when he first walked up to the apartment complex, he recognized Shepherd from other contact he had had with him. Although no evidence was introduced to mitigate the prejudicial nature of this statement, the Commonwealth's proposed admonition explained that the jury should not hold this comment against Shepherd because Fleischer patrolled Shepherd's neighborhood often and was trained to be familiar with the people living there. Even though Shepherd declined the proposed admonition, if it had been offered, it would have cured any potential prejudice. When an admonitory cure is possible, a mistrial is not required. *Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky.2000) (holding if the admonition would have cured the prejudice, there is no necessity for a mistrial even if the appellant declined to request an admonition).

Lastly, Fleischer testified that he and the other arresting officers tried to corner Shepherd because he knew that Shepherd might be a flight risk. Although this comment by itself obviously would have been prejudicial, Fleischer later testified that Shepherd did in fact run from the police, leading them on a chase through the apartment complex and the adjoining neighborhood. In light of the direct evidence that Shepherd did flee from the police, Fleischer's remark was not devastating to Shepherd and did not establish a manifest necessity for a mistrial. In short, Fleischer's testimony did not prevent Shepherd from having a fair and impartial trial.

V. **The Commonwealth's Statements During *Voir Dire* Regarding the Youth of the Defendants Did Not Warrant a Mistrial.**

■ During the *voir dire* stage of Shepherd's trial, the Commonwealth's attorney asked the potential jurors if they believed that the defendants deserved extra sympathy because they were young and if age would be a factor for any of them. One juror approached the bench and commented that he had two boys of similar age as the defendants and he would be more lenient when it came to sentencing. Miller's counsel then made a motion for a mistrial, in which Shepherd also joined, arguing that the Commonwealth had led the jury to believe that it is wrong to consider age even though age is a designated mitigating factor for sentencing. The trial court overruled Miller's motion and stated that counsel should clarify this issue for the jury pool. The Commonwealth then told the jury that age was a mitigating factor they could consider during the sentencing phase and it would be explained fully in their jury instructions. After the Commonwealth finished, Miller's counsel asked the jurors how many of them believed that they could not consider the age of the defendants in their deliberations. After twenty-eight jurors raised their hands, Miller's counsel further clarified this issue. She stressed that the jurors who raised their hands would need to change their minds because the statute mandates that age can be a mitigating factor in the penalty phase. Miller's counsel also pointed out that if there was a conviction, the judge would instruct them to consider the age of the defendants in their sentencing recommendation. When Miller's counsel asked the jurors if anyone had any questions about this issue, no one responded.

Once Shepherd's counsel finished his *voir dire*, a juror approached the bench and stated that she was not clear on why they should consider age. The trial court again explained that age would only be a factor in the sentencing phase, where it could be introduced as a mitigating cir-

cumstance. After this question, Miller's counsel renewed her motion for a mistrial, which the trial court overruled. Then, while the parties were moving to strike jurors for cause, Shepherd's counsel moved to strike the twenty-eight jurors who had raised their hands and originally agreed that they could not consider the age of the defendants. Miller's counsel joined that motion. In denying this joint motion, the trial court noted that it believed the issue had been cleared up by counsel's thorough explanation and that the jury would receive further instructions as needed. Shepherd now argues that the trial court erred by denying his and Miller's motion to strike the twenty-eight jurors and by overruling their joint motion for a mistrial. Finding that the trial court did not abuse its discretion, we reject Shepherd's argument.

■■■ A trial court has broad discretion in denying motions to strike jurors for cause, and these decisions will not be disturbed absent an abuse of discretion. *Mills v. Commonwealth*, 95 S.W.3d 838, 842 (Ky.2003). If there is "reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36(1). Shepherd contends that the Commonwealth's early statements during *voir dire* prevented several members of the jury pool from being fair and impartial in their decision-making. However, after the Commonwealth's statement about not giving the defendants extra sympathy due to their age, this issue was addressed again by the Commonwealth, Miller's counsel, and the trial court, all of whom told the jury that they could consider the defendants' youth during sentencing. In the end, the jury members declined to raise their hands when asked if they had any questions regarding this matter. Moreover, in the sentencing phase, the jury instructions expressly identified as a miti-

gating circumstance "[t]he youth of the Defendant, Michael Shepherd, at the time of the crime." Because this issue was adequately clarified for the jury, there is no reasonable ground to believe that the jury was prevented from rendering a fair and impartial sentencing recommendation and the trial court did not err. Since Shepherd was not prejudiced in this instance, the trial court also did not err in denying his motion for a mistrial. *Bray*, 177 S.W.3d at 752.

## VI. A Technical Violation of KRS 610.220(2) Does Not Render Shepherd's Confession Inadmissible Where It Is Otherwise Found to Have Been Given Voluntarily.

■■■ During Shepherd's trial, redacted portions of his recorded police interview were introduced by the Commonwealth. Prior to trial, Shepherd had moved to suppress this evidence, arguing that the length of his police interview violated KRS 610.220(2), making his statements the fruit of a poisonous tree. During the suppression hearing on October 4, 2005, the trial court found that Shepherd properly understood his *Miranda* rights, was not under the influence of any substance that would impair his judgment, and was not physically abused or coerced by the police. The court also ruled that a possible technical violation of KRS 610.220(2) did not necessarily require the suppression of an otherwise voluntary statement. Using the totality of the circumstances approach, the trial court concluded that Shepherd's statement was given voluntarily and was admissible. Shepherd now contends that the trial court erred by admitting portions of his police interview, arguing that the interview was coercive as a matter of law because he was held in custody longer than the statutory limit set forth in KRS 610.220(2). Agreeing with the trial court's totality of the circumstances approach, we affirm.

KRS 610.220(2) states that "a child may be held in custody pursuant to this section for a period not to exceed two (2) hours, unless an extension of time is granted." At the suppression hearing, there was a discrepancy regarding what time Shepherd was originally brought to the police station. Sergeant Williams testified at the hearing that based on the information he had been given, Shepherd was arrested on September 16, 2004, at approximately 6:10 p.m. and brought to the station at 6:30 p.m. Detective Cain, however, testified that Shepherd had arrived at the police station at 5:26 p.m. At 8:06 p.m., Sgt. Williams telephoned a court-designated worker to extend Shepherd's time in custody, which was granted. At 9:54 p.m., Sgt. Williams called the court worker again to request a half-hour extension so that Shepherd could be photographed and fingerprinted. After this half-hour extension, Shepherd's mother arrived at the police station and spoke with Shepherd before he was transferred to the Juvenile Intake facility.

The trial court declined to make a finding of fact regarding when Shepherd was actually brought to the police station. Rather, the court treated a potential violation of KRS 610.220(2) as one factor in deciding whether Shepherd's statement, as a whole, was given voluntarily. Although there are no published Kentucky cases dealing with violations of KRS 610.220, this Court held in *Murphy v. Commonwealth*, 50 S.W.3d 173, 184–185 (Ky.2001), that when there is every indication that a confession is given voluntarily, a technical violation of KRS 610.200 does not automatically make the statement inadmissible. KRS 610.200 requires a peace officer who takes a child into custody to notify the child's parents or guardian. In *Murphy*, the police made no attempt to notify the appellant's parents, which violated the statute. *Id.* at 185. However, since the appellant never raised the issue of the

voluntariness of his statement and properly received and waived his *Miranda* rights, this Court held that the defendant's confession was admissible despite the statutory violation. *Id.* In his concurring opinion in *Murphy*, Justice Keller, while agreeing that a technical violation of KRS 610.200 should not automatically result in the suppression of a confession, stressed that trial courts should nonetheless consider "compliance with the provisions of KRS 610.200 as an important variable in determining whether a juvenile's confession was given voluntarily." *Id.* at 187 (Justice Keller, concurring).

We agree with this analysis and find that it should also apply to violations of KRS 610.220. Although a police officer's failure to comply with these protective statutes is a serious infringement, the violation by itself does not necessarily justify suppressing the confession. Rather, trial courts should treat a violation of KRS 610.220 as an important factor in the overall determination of whether a juvenile defendant gave his statement voluntarily. In Shepherd's case, although the police officers may have been tardy in complying with the statute's two-hour requirement, they did not disregard the statute nor did they greatly exceed the statutory time limit. Moreover, we agree with the trial court that since Shepherd was given his *Miranda* rights, was found to have adequately understood them, was not under the influence of drugs or alcohol, and was not abused or coerced by the police, Shepherd's taped police statement was given voluntarily and was admissible at trial.

## VII. It Was Improper to Include Life Without the Benefit of Probation or Parole in Shepherd's Penalty Phase Jury Instructions But Shepherd Was Not Prejudiced By This Error.

During the penalty phase of Shepherd's trial, the trial court instructed the

jury that they could consider the following possible punishments for Shepherd's intentional murder conviction:

(1) Imprisonment for a term of not less than 20 years nor more than 50 years;

(2) Imprisonment for life;

(3) Imprisonment for life without the benefit of probation or parole until the defendant has served a minimum of 25 years of his sentence;

(4) Imprisonment for life without the benefit of probation or parole.

The jury ultimately recommended that Shepherd be sentenced to life without the benefit of probation or parole for a minimum of twenty-five years. Shepherd now contends that the trial court erred by including the sentencing consideration of life without the benefit of probation or parole, a sentencing option in violation of KRS 640.040(1). Agreeing that the trial court erred with respect to this instruction, but finding that the error was harmless, we affirm on this issue.

 KRS 640.040(1) states in relevant part:

A youthful offender convicted of a capital offense regardless of age may be sentenced to a term of imprisonment appropriate for one who has committed a Class A felony and may be sentenced to life imprisonment without benefit of parole for twenty-five (25) years.

KRS 532.060(2)(a) states that someone who commits a Class A felony may be sentenced to "not less than twenty (20) years nor more than fifty (50) years, or life imprisonment." Although KRS 532.030(1) does allow a person convicted of a capital offense to also be sentenced to life without parole, the trial court classified Shepherd as a youthful offender pursuant to KRS 640.010. Thus, the youthful offender chapter governs his appropriate sentencing considerations. According to KRS 640.040, Shepherd's statutorily authorized

penalties were twenty to fifty years, life in prison, or life without parole for twenty-five years. Since the trial court included the fourth option of life without the possibility of parole, it erred in the penalty phase jury instructions. However, the Commonwealth argues that even if this instruction was given in error, Shepherd was not prejudiced since he ultimately received a statutorily authorized sentence, i.e., life without parole for twenty-five years. Due to the prior opinions of this Court, we must agree with the Commonwealth.

This Court has held that when the trial court instructs the jury as to an improperly high maximum penalty, but the jury recommends a sentence within the statutory guidelines, a defendant must be able to point to actual prejudice to justify a reversal. *Mathews v. Commonwealth*, 997 S.W.2d 449, 453 (Ky.1999), *overruled on other grounds by Hayes v. Commonwealth*, 58 S.W.3d 879 (Ky.2001). Shepherd's only allegation of prejudice is that the jury may have relied on the entire sentencing scheme during their penalty deliberations. However, this assertion does not amount to actual prejudice. Like the appellant in *Mathews*, Shepherd "has failed to demonstrate how he was prejudiced by an instruction upon which the jury did not rely." *Id.* Since the jury recommended that Shepherd be sentenced to a term authorized by KRS 640.040(1), the instruction error was harmless and did not prejudice Shepherd.

**VIII. Tim McCann's Taped Police Interview Was Admissible Pursuant to KRE 801A(a)(1) and Thus The Trial Court Did Not Err In Allowing It to be Entered as Evidence.**

 During Shepherd's trial, the Commonwealth called Tim McCann, who was Shepherd's cousin and had been living with

him for several months. The police had interviewed McCann on September 16, 2004, the day after the robbery and murder of Liebengood. During that interview, McCann told the police that on the afternoon of the robbery, he heard Miller and Shepherd say they needed some money and wanted to rob someone. McCann also revealed that he had heard from friends in the neighborhood that Shepherd had shot Liebengood. However, McCann's testimony at trial was either very different from this interview or he could not recall what he had told the police originally, prompting the trial court to make a finding that McCann was evasive and hostile. After discussing it with counsel, the trial court permitted the Commonwealth to play the portions of McCann's recorded police interview that were inconsistent with his trial testimony on direct examination.

Soon after McCann's testimony, the Commonwealth called Detective Matt Brotherton, who had taped McCann's police interview. After Brotherton authenticated the tape, the Commonwealth moved to enter it into evidence. Shepherd's counsel objected to this motion and asked to approach the bench. During the bench conference, the Commonwealth noted that if the jury wanted to hear the tape again, everyone would be called back into the courtroom and only those portions that had been played during trial would be heard again. The trial court concluded that the tape could be admitted into evidence, but its admittance would be subject to further discussion if the jury requested to have it replayed. The trial record reveals that the jury never made such a request. Shepherd now contends that the trial court erred by admitting McCann's taped interview into evidence, arguing its admission violated KRE 803(5). Finding no error, we affirm.

KRE 803(5) states that a writing or record can be used to refresh a witness's memory, but "if admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party." Shepherd argues that since McCann's interview was introduced to refresh his memory at trial, this rule prohibited the trial court from admitting the interview into evidence. However, since McCann himself never allowed his memory to be refreshed at trial and never actually testified about what he originally told the police, his taped interview was not introduced pursuant to KRE 803(5) to refresh his memory. Rather, his interview was introduced pursuant to KRE 801A(a)(1) to reveal his prior inconsistent statements.

KRE 801A(a)(1) states that a prior inconsistent statement of a witness is admissible as long as the defendant has an opportunity to cross-examine the witness at trial regarding the prior statement and a proper foundation is laid. Similarly, this Court has held that prior inconsistent statements can be admitted not just to impeach witnesses, but also as substantive evidence. *Manning v. Commonwealth,* 23 S.W.3d 610, 613 (Ky.2000); *Brock v. Commonwealth,* 947 S.W.2d 24, 30–31 (Ky. 1997). Since the Commonwealth provided a proper foundation and Shepherd had ample opportunity to cross-examine McCann regarding his police interview, the trial court did not err by admitting this evidence.

## IX. Since Devan Jones's Taped Police Interview Was Not Material To Shepherd's Guilt or Innocence, No *Brady* Violation Occurred.

After the conclusion of Shepherd's trial, the parties became aware of an interview between the police and Devan Jones, a friend of Shepherd's. During the interview, which was conducted on May 12, 2005, Jones revealed information about the

murder of Liebengood. After learning of this interview, Shepherd made a motion for a new trial based on the premise that the interview included exculpatory evidence and the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding it. In denying Shepherd's motion, the trial court stated that Jones's interview was "rambling, inconsistent, confusing, and practically worthless for any substantial use in this case." Agreeing that Jones's interview was not material to Shepherd's guilt or innocence, we affirm.

Eight months after the robbery and murder of Liebengood, the police questioned Devan Jones about an unconnected robbery involving a utility worker. During this interview, the officers learned that Jones had information about the Liebengood murder. Jones revealed that he had known Michael Shepherd for about two years. He stated that Shepherd would brag to him about beating up "these white boys or these Mexicans" and that Shepherd would often pick people out on the sidewalks to rob when he needed money. Regarding the night of Liebengood's murder, Jones stated that he was with Shepherd, Miller, and Cook before they left for the English Manor Apartments. Jones said that Robert Miller came out of his apartment with a gun and then gave it to Shepherd. Shepherd then stated that they should "hit a lick," Miller agreed, and Miller appeared to be following in Shepherd's footsteps. After the robbery and murder, Jones said that he spoke with Patrick Cook at the detention center where Cook was being held. According to what Cook told Jones, Miller was egging Shepherd on to "put that bitch in the trunk or something. . . ." Jones was not completely clear on what Cook said happened next, but either Cook started walking away after Shepherd pulled the trigger, or Shepherd pulled the trigger and then Cook headed home. Jones also stated that he did not know why the boys wanted to put the victim in the trunk or if Miller ever wanted Shepherd to shoot Liebengood. At the conclusion of Jones's interrogation, Detective Cain, the officer who recorded his statement, booked Jones's interview under an incorrect case number and as evidence under the utility worker robbery, which explains why neither party had knowledge of the interview prior to trial.

■ Shepherd argues that since Jones's interview contradicts part of Cook's testimony and shows that Miller took a commanding role in the robbery, it was crucial to his defense and not disclosing it constituted a violation of *Brady v. Maryland, supra.* In order to prevent a due process violation, *Brady* requires the prosecution to provide the defense with all evidence, whether requested or not, that is material either to the defendant's guilt or punishment. *Id.* at 87, 83 S.Ct. 1194; *U.S. v. Agurs,* 427 U.S. 97, 106–107, 96 S.Ct. 2392, 2398–2399, 49 L.Ed.2d 342 (1976). Furthermore, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *U.S. v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Thus, reversal based on a *Brady* violation is only justified by an appellate court if such a reasonable probability exists. *Bowling v. Commonwealth,* 80 S.W.3d 405, 410 (Ky.2002).

Although Jones's police interview may have been relevant in Shepherd's case, it certainly does not constitute material evidence that would affect Shepherd's guilt or innocence. First, a large portion of Jones's interview is harmful to Shepherd's case, such as Jones's assertion that it was Shepherd's idea to "hit a lick" the night of the murder, that Miller was following in

Shepherd's footsteps, and that Shepherd pulled the trigger and killed Liebengood. The only potentially helpful statement by Jones was what Patrick Cook told him about Miller. During his police interview, Jones stated, "I think Patrick [Cook] told me uh, that Robert [Miller] said put that bitch in the trunk or something ... put that bitch, get that bitch out of the front seat and put her in the trunk. He said something." Although this statement does portray Miller as being involved in the robbery, Patrick Cook had already testified during the joint trial that Miller grabbed Liebengood's arm and struggled with her on the edge of the trunk before she was shot. Thus, there was evidence introduced during trial that Miller played an active role in the robbery and did want to put Liebengood in the trunk. Since the only helpful portion of Jones's interview is cumulative to the other evidence introduced at Shepherd's trial, no reasonable probability exists that the result of Shepherd's trial would have been different if the Commonwealth had disclosed the interview. Therefore, we affirm the trial court's denial of Shepherd's motion for a new trial.

### CONCLUSION

During the joint trial of Shepherd and Miller, since Miller's confession was properly redacted and did not expressly implicate Shepherd was the shooter, no violation occurred. Although the trial court erred with respect to Shepherd's penalty phase jury instructions, this error was harmless since Shepherd received a statutorily authorized sentence. With regard to Shepherd's other allegations of error, we find that the trial court did not err and Shepherd has no grounds for relief. Thus, the May 25, 2006 Judgment of the Fayette Circuit Court convicting Michael Shepherd of intentional murder, first-degree rob-

bery, and tampering with physical evidence is affirmed.

All sitting. All Concur.