RENDERED:  DECEMBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1010-MR

CRAIG ROSS                                                                              APPELLANT

v.
APPEAL FROM LAWRENCE CIRCUIT COURT
HONORABLE JOHN DAVID PRESTON, JUDGE
ACTION NO. 17-CI-00196

WESTEK DEVELOPMENT, LLC                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND MCNEILL, JUDGES.

CALDWELL, JUDGE:  Westek Development, LLC (Westek), filed an action in

Lawrence Circuit Court against Craig Ross (Ross), alleging that Ross owed it

$12,508.75 for surveying work.  After a bench trial, the trial court entered

judgment in Westek's favor for the full amount sought and Ross appealed.  As the

trial court's factual findings are not clearly erroneous and the contract law

arguments Ross raises on appeal were not made to the trial court, we affirm.

# FACTS

Westek performed survey work on portions of an approximately 540-acre property owned by Ross's father-in-law, Kenneth Davis. Ross lived on part of this property. Initially, Ross approached Westek's founder, Cliff West (West), about having Westek perform two tasks: 1) subdividing out a one-acre lot surrounding a house where a family friend lived, and 2) determining the northern boundary of the 540-acre property from east to west—to clear up some confusion about property lines and/or resolve a property dispute with an adjoining landowner. Later, Ross testified at trial that West orally estimated the charge for performing these two tasks to be $2,000 to $2,500. West denied giving an estimate or discussing pricing or rates at all with Ross. Ross and Westek apparently had no prior dealings.

Several months after West and Ross initially had contact, West and some Westek employees met Ross on the property after Westek determined the northern boundary and subdivided out the one-acre lot. Ross inquired about his bill so far and was directed to call the office. Ross also inquired about Westek doing additional survey work to determine the southern boundary of the property as he believed some timber might have been cut from his family's land. According to the trial testimony of West and some Westek employees, Ross clearly requested that Westek also survey the southern boundary. According to Ross's trial

testimony, however, he only said that Westek might be needed to survey the southern boundary depending on how the other work came out and he told West that West would need to talk to Davis to get authorization to do the southern boundary work. Ross testified that West said he would talk to Davis but failed to do so.

At this same meeting after the initial work was done, Ross took issue with where Westek had placed pins marking the one-acre lot. He said the pin placement was inconsistent with where he had earlier placed flags indicating where he wanted the lot to be. Westek employees said they could move the pins and change the plat to reflect different boundaries for the one-acre lot to suit him. Westek employees also informed Ross that Westek's deed research showed that an adjoining landowner had superior title to an area in question around the northern boundary. Ross was disappointed to hear this.

After this meeting to discuss the initial work (northern boundary and one-acre lot subdivision), Westek employees worked to determine the southern boundary. Some Westek employees later testified that they had contact with Ross while working on the southern boundary. But Ross testified that he did not know they were working on the southern boundary until some Westek employees came to his door to announce that the southern boundary work was done. He denies having observed them working on the southern boundary before this point and

continues to assert that Westek should have gotten approval from Davis before doing this work. Ultimately, after determining the southern boundary, Westek concluded that no timber had been taken from the property.

Ross was eventually presented with an invoice for $12,508.75 for all the surveying performed by Westek. He refused to pay any portion of this bill and he hired another surveyor to determine the northern boundary and subdivide the one-acre lot at a cost of around $2,500. Westek filed suit against him, seeking judgment for the full $12,508.75 plus interest and court costs. The complaint did not specify whether the recovery sought was for breach of contract or under *quantum meruit*[1] or some other legal theory.

At trial, Ross pointed out that Westek had not certified its drawings of the northern (or southern boundaries). West testified that was not normally done unless something was being recorded, and that drawings would be certified when Ross paid for the work.

West also testified that he never discussed pricing or charges for the work with Ross and that there was not an arrangement for any Westek representative to call Ross to get approval for further work if charges exceeded a

---

[1] *See generally Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky. App. 1987) (explaining how a party may obtain recovery in *quantum meruit* for a contract implied in law and how such recovery does not necessarily depend on the parties' intentions). The parties did not discuss *quantum meruit* in their briefs, and the trial court did not explicitly discuss it in its judgment.

certain number like $10,000. Ross presented the testimony of the other surveyor

who determined the northern boundary and subdivided the one-acre lot for about

$2,500. This other surveyor testified that without certification, Westek's drawings

could not be recorded. But this surveyor also admitted in his testimony that there

was nothing really wrong with the work Westek had performed on the one-acre

subdivision. For example, the pins marking the one-acre lot could be moved to

better suit the customer so long as a one-acre area was marked off.

Following the presentation of the proof, the trial judge made remarks

about how this appeared to be an "all or nothing" case since Westek claimed it was

due the full amount and Ross claimed he should not have to pay anything. Neither

party took issue with this characterization or advanced alternative arguments about

how Westek might be entitled to a smaller payment but not the full amount

claimed. After indicating that judgment would likely be totally in one party's

favor but declining to say which one, the trial judge took the matter under

advisement to issue a written judgment within a few days.

In its written judgment, the trial court issued detailed factual findings

but terse conclusions of law.[2] The trial court found Ross less credible than other

_____

[2] Curiously, no cases, statutes, or any other legal authorities were cited in the trial court's conclusions of law, which we quote in their entirety: "The Court concludes as a matter of law that the Plaintiff performed the work involved in this case at the request of the Defendant, that a reasonable charge for the work was $12,508.75, and that the Defendant has failed and refused to pay that amount, or any amount. The Court concludes that the Plaintiff is entitled to recover that amount from the Defendant." (Pp. 9-10, judgment).

witnesses, including Westek employees.  It cited Ross's not calling his father-in-law Kenneth Davis and a Westek employee who Ross claimed was at a meeting in lieu of another employee as one reason it did not find Ross's testimony credible.  And it stated that Ross's dissatisfaction with certain conclusions reached by Westek—that the adjoining landowner had better title to an area near the northern boundary and that no timber was taken from Ross's family's land near the southern boundary—did not excuse Ross from paying the amount charged, which the trial court found to be reasonable.

Ross filed a motion to alter, amend or vacate under Kentucky Rules of Civil Procedure (CR) 59.05.  In his CR 59.05 motion, Ross took issue with some factual findings and with the trial court's drawing inferences against him based on witnesses not testifying.  And he argued that he should not have to pay for the work because:  1) drawings were not certified, 2) some work was performed incorrectly—*i.e.*, the one-acre lot was marked incorrectly, and 3) he did not authorize work on the southern boundary contrary to the trial court's finding.  He argued that the trial court misunderstood his testimony and failed to recognize Westek employees' bias in favor of their employer.  The trial court denied his motion after a hearing.[3]

---

[3] No transcript or recording of the hearing on the CR 59.05 motion was included with the record on appeal.

Incredibly, from our review of the record (including portions cited by the parties and other portions), apparently no one explicitly discussed any issue of contract law in the trial court proceeding—from the complaint and answer[4] through the trial, judgment, and resolution of the CR 59.05 motion.[5] For example, there appear to be no discussions in the trial court record about whether a contract was formed or breached or what its terms might have been. Nor have we been directed to any discussion of whether recovery was due in *quantum meruit*.

On appeal, Ross requests that the judgment against him be reversed or reduced for many of the same reasons asserted in his CR 59.05 motion and also on the basis of contract cases or principles never apparently discussed at trial.

## STANDARD OF REVIEW

We review the factual findings made by the trial court following the bench trial for clear error. Thus, we must not set aside its factual findings unless

---

[4] There is no mention of the word "contract" in either the complaint or the answer. The complaint simply asserted that Westek performed work at Ross's request, that Ross refused to pay for it, and that Ross should pay the full invoiced amount. One of the affirmative defenses raised in the answer was failure to state a claim. And although Ross admitted that Westek performed some work and sent him a bill for the full amount, he "denie[d] the amount claimed due" and alleged that Westek "far exceeded the limits of their estimate, without securing prior approval." (Record (R.), p. 5). But neither party explicitly discussed elements of a breach of contract claim in their initial pleadings.

[5] The parties have not cited to any discussion of contract principles at trial and their briefs on the CR 59.05 motion contain no explicit discussion of contract law. We presume that no oral discussion of contract law occurred at the CR 59.05 hearing since the parties have not cited to any such discussion and no transcript or recording of this hearing was included with the record on appeal.

they are not supported by substantial evidence. And we must give due regard to the trial judge's opportunity to judge the credibility of the witnesses. But we do not extend similar deference to its application of the law and legal rulings, which we review *de novo*. *EQT Production Co. v. Big Sandy, L.P.*, 590 S.W.3d 275, 285 (Ky. App. 2019).

## ANALYSIS

We first review the components of Ross's arguments relating to the trial court's assessments of witness credibility and the accuracy of its factual findings. Considering the deferential standard of review that we must apply, we discern no reversible error in the factual findings or assessments of witness credibility which Ross challenges on appeal.

Ross argues that the trial court erred in finding that he authorized Westek to perform work on the southern boundary. He contends that the trial court misconstrued his testimony to find that he admitted to observing Westek employees working on the southern line. He asserts he testified that he did not know of any work being performed on the southern boundary until Westek employees arrived at his doorstep to tell him the southern boundary work was complete. Ross also insists that he never testified to seeing any Westek employees working on the southern boundary. We note that Westek employees testified to the contrary and that they had encountered Ross while working on the southern

-8-

boundary.  Regardless of whether the trial court was correct in finding that Ross directly observed Westek employees working on the southern line before he was informed the work was complete, the trial court found that Ross authorized work on the southern boundary based on other witnesses' testimony.  The trial court found that Ross requested the work and was frank in its finding that Ross was not credible in his testimony.

The trial court noted in its findings that whether Ross authorized work on the southern boundary was an important issue in the case.  Referring to Ross's testimony in which he denied authorizing work on the southern boundary and said his father-in-law would have to give permission for that, the trial court found this testimony "peculiar, in that it is inconsistent for the Defendant [Ross] to take the position that he could not authorize the work on the southern line, when he authorized the work on the northern side on four separate occasions." (P. 7, judgment).  The trial court also noted how Ross's testimony contradicted that of other witnesses who said he approved the southern boundary work.

The other witnesses' testimony that Ross requested that Westek perform the southern boundary work is substantial evidence supporting the trial court's finding.  Thus, while another fact-finder might have accepted Ross's testimony to the contrary instead, the trial court's factual finding that Ross authorized (or requested) the southern boundary work is not clearly erroneous.

And despite Ross's claims that Westek employees' testimony was biased, we must give "due regard" to the trial court's unique opportunity to assess credibility of the witnesses. *EQT*, *supra*; CR 52.01. Unfortunately for Ross, the trial court simply did not find his testimony on this matter credible.

In addition to pointing to other witnesses' testimony that Ross requested the southern boundary work, the trial court also noted that Ross's testimony contradicted other witnesses' testimony about who was present at various meetings. For example, the trial court pointed to Ross testifying that he never saw Westek employee Coty Roe[6] before trial, but Roe and other witnesses specifically recalled Roe being present at meetings with Ross.

In addition to these witnesses' testimony contradicting Ross's, the trial court also noted in its findings that Ross failed to call certain witnesses whose testimony could have been helpful to him—specifically, Kenneth Davis (Ross's father-in-law, who Ross claims had sole authority to authorize the southern boundary work) and Westek employee Doug Burchett (who Ross remembered being at meetings instead of Roe). Other witnesses had also testified about Burchett being present at some meetings. And the trial court noted in its judgment

---

[6] This witness's name is spelled differently in various parts of the record: either Cody or Coty as a first name, Roe or Rowe as a surname.

that Ross initially declined to announce ready for trial because Burchett had not arrived yet, but Burchett was never called to testify after his arrival.

Ross now asserts that calling these witnesses would have been pointless because Davis was not present at any meetings and Burchett did not recall anything about meetings. Westek argues these assertions are not supported by anything of record. Ross did at least specifically argue in his CR 59.05 motion that drawing inferences for not calling Burchett was unfair, asking what good it would do to call a witness who had no recollection of the meeting. But his written CR 59.05 motion did not specifically discuss his reasons for not calling Davis.

Regardless of Ross's reasons for not calling these witnesses, however, Westek correctly points out that no particular factual finding by the trial court was specifically based on adverse inferences from witnesses not testifying. Instead, Ross's not calling these two witnesses to testify was simply cited as one reason among several why the trial court did not find Ross to be a credible witness. Based on our review of the record, we conclude that any error in drawing adverse inferences against Ross for not calling these witnesses was harmless. CR 61.01.

Having discerned no reversible error in the trial court's assessment of factual disputes and witness credibility, we now shift our attention to its legal conclusions. Ross argues in his brief that Westek "did not fulfill their [sic] contract . . . ." (Appellant's brief at p. 7). Later, and contrarily, Ross argues

-11-

"[s]ince there was no meeting of the minds, Appellant [Ross] cannot be liable under contract for the work." (Appellant's brief at p. 8.) Generally, much of Ross's appeal is premised upon a contention that the trial court failed to follow accepted contract principles. But even though Ross certainly disputed his obligation to pay in the trial court proceedings, he failed to convey to the trial court why he should not be held liable as a matter of contract law principles. In fact, the word "contract" does not appear a single time in Ross's CR 59.05 motion.

Our rules require that an appellant's brief must state if and how issues are preserved for appeal with supporting citations to the record. CR 76.12(4)(c)(v). Ross asserts that the issues he raises on appeal were preserved for our review by the filing of his CR 59.05 motion to alter, amend, or vacate. Under the facts here and solely for purposes of this appeal, we will assume that it was appropriate to preserve issues for appeal by raising them in a CR 59.05 motion.[7] Ross made some of the same arguments in his CR 59.05 motion that he makes in this appeal— particularly relating to factual disputes and witness credibility. And he generally argued in his written motion that he should not have to pay due to various factors, like lack of certification of drawings and alleged error in performing work such as

_____

[7] Generally, "[a] party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005). But here, the arguments in the CR 59.05 motion generally took issue with findings and conclusions of the trial court which were not announced prior to it issuing its written judgment so, in fairness, Ross could not have raised such issues previously.

marking the one-acre lot subdivision. But his written CR 59.05 motion does not explicitly argue why he should not have to pay on the basis of contract law principles. And he has not cited to anywhere else in the record where he raised such contract issues—thus, they have not been preserved for our review.

In addition to challenging the trial court's factual finding that he authorized or requested the southern boundary work, Ross argues in his appellate brief that no meeting of the minds had occurred creating an enforceable contract, so he should not be held liable in contract. But he fails to cite to the record to show where he made this contract argument to the trial court.

Ross also argues that he should not be held liable in contract for uncertified, non-recordable drawings. Although he argued to the trial court in his CR 59.05 motion that he should not be held liable for useless "wall art," he did not explicitly make the contract-law-based argument he asserts on appeal—that Westek's not certifying the drawings was a breach justifying his non-payment.

Similarly, Ross argued to the trial court that he should not have to pay for work he asserts was done incorrectly—such as the one-acre lot subdivision— but he did not argue this to the trial court in terms of contract cases or principles. Instead, he argued Westek should not receive credit for work performed incorrectly and likened the allegedly improper pin placement to a mechanic replacing the

wrong part.[8]  On appeal, he now argues that he should not have to pay for a benefit received that he did not bargain for and cites *Dalton v. Mullins*, 293 S.W.2d 470 (Ky. 1956).  But he did not cite that authority nor clearly make an argument based on contract law in this regard to the trial court.

In essence, neither the certification of drawings nor the alleged incorrectness of the one-acre subdivision is a factual issue.  There is no real dispute that the drawings were not certified prior to the trial.  And whether this lack of certification excuses payment under a contract might depend on what the terms of any contract were.  But again, there was no discussion of contract issues below and the trial court was apparently not requested to and did not find what the terms of any contract were.

Similarly, there really was not a factual issue about placement of pins or whether the subdivision of a one-acre lot was done correctly.  There is no dispute that Ross was not happy with the pin placement, but the boundaries could be shifted so long as an acre around the house was identified.  And again, whether and when the work was done to Ross's specifications and how this influenced the

---

[8] This portion of his CR 59.05 motion asserted that:  "the Court has given no weight that the Plaintiff failed to establish the pins on the one acre survey, consistent with the location of the pin flags that were placed prior to the Plaintiff's arrival on the premises.  The Court gives the Plaintiff credit for performing work, but gives no weight to the work, in fact, being performed incorrectly.  This is akin to hiring a mechanic to replace the alternator, who instead, replaces the power steering pump."  (R., p. 106).

obligation to pay might depend on the terms of any contract. But Ross did not present contract law arguments about this to the trial court.

We apply a *de novo* standard to determine if the trial court erred in its legal conclusions, such as its conclusion that Ross was liable for the full invoiced amount.[9] But despite this less deferential standard of review for determining if error occurred, Ross must meet a greatly heightened standard to obtain relief for alleged, unpreserved errors in applying contract law. He fails to cite to the record to show where he made such contract arguments to the trial court and he did not request palpable error analysis—even after Westek pointed out in its brief that a contract law issue raised on appeal had not been preserved for appeal. (Ross did not file a reply brief.)

When issues are not preserved for appeal, our rules provide that we "may" consider palpable errors affecting parties' substantial rights and grant relief if we determine that the error resulted in a manifest injustice. CR 61.02. However, precedent indicates that we are not required to review for palpable error— particularly where a party does not request it. *See Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008) ("Absent extreme circumstances amounting to a substantial miscarriage of justice," appellate courts should not conduct a palpable

---

[9] Westek argues in its brief that the trial court's "finding" Ross financially liable for all work performed is not clearly erroneous.

error review under Kentucky Rule of Criminal Procedure (RCr) 10.26 unless the appellant requests palpable error review and briefs how the alleged error amounts to palpable error); *Nami Resources, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018) ("The language of CR 61.02 is identical to its criminal law counterpart, RCr 10.26, and we interpret that language identically.").[10] As Ross has not requested palpable error analysis, we review unpreserved issues only to determine whether there are extreme circumstances amounting to a substantial miscarriage of justice.

The trial court's determining Ross to be fully liable for the invoiced amount with no explicit discussion of contract formation or terms might appear questionable if Ross had brought contract issues to the trial court's attention. But this dispute about how much Ross must pay for survey work simply does not present extreme circumstances amounting to a substantial miscarriage of justice. As contract issues were not preserved for our review and palpable error analysis was not requested, we decline to opine on the contract law issues raised in Ross's

---

[10] Although not binding precedent, at least one of our unpublished opinions has applied *Shepherd* in a civil context to hold that since palpable error review under CR 61.02 was not requested, we would only review the unpreserved issue to determine whether there were extreme circumstances amounting to a substantial miscarriage of justice. *See C.H. v. Cabinet for Health and Family Services*, No. 2015-CA-000098-ME, 2016 WL 1069037 at *4 (Ky. App. Mar. 18, 2016) (unpublished). *See also A.G. v. Cabinet for Health and Family Services*, No. 2018-CA-001218-ME, 2020 WL 2609985 at *4 (Ky. App. May 22, 2020) (unpublished, discretionary review granted by Kentucky Supreme Court on October 22, 2020).

appellate brief. *See Shepherd*, 251 S.W.3d at 316 (declining to review unpreserved issue for which appellant failed to specifically request palpable error review).

In sum, the trial court's factual findings and assessments of witness credibility are not clearly erroneous and Ross has not shown entitlement to relief on any error in its legal conclusions—especially since he fails to cite to any discussion of contract law arguments in the record. Thus,we must affirm.

## **CONCLUSION**

For the foregoing reasons, we affirm the Lawrence Circuit Court's judgment.

ALL CONCUR.

BRIEF FOR APPELLANT:

Brian Cumbo
Inez, Kentucky

BRIEF FOR APPELLEE:

Brad Derifield
Louisa, Kentucky