RENDERED:  JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1161-MR

RANDY MEADOR                                        APPELLANT

v.            APPEAL FROM CUMBERLAND CIRCUIT COURT
HONORABLE DAVID L. WILLIAMS, JUDGE
ACTION NO. 19-CR-00078

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND KAREM, JUDGES.

DIXON, JUDGE:  Randy Meador appeals from orders revoking his probation and sentencing him to six months' imprisonment for contempt, entered by the Cumberland Circuit Court on August 30, 2022, and September 7, 2022, respectively.  After careful review of the briefs, record, and law, we vacate and

remand with respect to the probation revocation and affirm regarding the order of contempt.

## PROBATION REVOCATION

A. Factual Background and Procedural History

On August 29, 2019, a grand jury of the Cumberland Circuit Court indicted Meador for one count of theft by failure to make required disposition,[1] and for being a first-degree persistent felony offender.[2] Pursuant to his agreement with the Commonwealth, Meador later entered a guilty plea to the theft charge and to being a second-degree persistent felony offender.[3] The trial court accepted Meador's guilty plea and, consistent with the Commonwealth's recommendation, sentenced him to eight years' imprisonment. The Commonwealth also indicated that if Meador moved for shock probation,[4] it would not oppose the motion if Meador paid restitution. Thereafter, Meador paid restitution and moved the court for shock probation, which it granted on December 19, 2019, probating his sentence for five years.

---

[1] Kentucky Revised Statutes (KRS) 514.070.

[2] KRS 532.080(3).

[3] KRS 532.080(2).

[4] KRS 439.265.

On April 1, 2022, the Commonwealth moved to revoke Meador's probation. In support, it cited a March 29, 2022 "violation of supervision report" from Probation and Parole which indicated Meador had failed to report as required; had absconded; and since his release had received new felony charges, new felony convictions, and a new misdemeanor conviction.

On August 30, 2022, the trial court considered the Commonwealth's motion and conducted a revocation hearing. Meador, who was in jail at the time, attended by video. The probation officer who authored the "violation of supervision report" testified that revocation was appropriate based on his report. The officer testified that Meador was convicted of the felonies on January 3, 2022, and the misdemeanor on October 25, 2021. On cross-examination, the officer represented that, according to his information, the offenses occurred after Meador was placed on probation.

Meador's counsel declined to call any additional witnesses. During closing argument, however, she contended that the operative dates relating to Meador's new offenses may have preceded the trial court's December 19, 2019, probation order and asked the court to consider allowing Meador to remain on probation even though he was incarcerated. The court declined and revoked Meador's probation. However, it advised Meador and his counsel that if they

could provide proof of their contention, it would consider setting aside the revocation.

On August 30, 2022, the trial court entered its order revoking Meador's probation, and this appeal followed.

B. Legal Analysis

On appeal, Meador argues the trial court failed to appropriately justify its revocation order with findings consistent with KRS 439.3106(1). Meador did not raise this argument before the trial court but now asks this Court to review for palpable error[5] pursuant to RCr[6] 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

---

[5] Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review "unless such a request is made and briefed by the appellant." *Jenkins v. Commonwealth*, 607 S.W.3d 601, 613 (Ky. 2020) (quoting *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008)). The Commonwealth emphasizes that Meador failed to make such a request in his initial brief. However, in response to the Commonwealth, Meador effectively cured this preservation issue by making and supporting a request for palpable error review in his reply brief. *See, e.g.*, *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky. 1990) (explaining that a reply brief allows an offending appellant a second chance to comply with appellate procedural rules regarding preservation if his initial brief fails to do so).

[6] Kentucky Rules of Criminal Procedure.

We consider an error palpable "only if it is clear or plain under current law[.]" *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009) (citation omitted). "[W]hat a palpable error analysis 'boils down to' is whether the reviewing court believes there is a 'substantial possibility' that the result in the case would have been different without the error." *Roberts v. Commonwealth*, 410 S.W.3d 606, 610 (Ky. 2013) (citing *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).

We agree that palpable error occurred. Prior to revoking probation, a trial court must comply with KRS 439.3106 by making two additional findings:

> [T]he probationer's failure to comply with the terms of probation constitutes "a significant risk to [his] prior victims . . . or the community at large," and that the probationer "cannot be appropriately managed in the community."

*Commonwealth v. Andrews*, 448 S.W.3d 773, 777 (Ky. 2014) (quoting KRS 439.3106(1)). By requiring these two findings, "the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations." *Id.* at 779 (citation omitted).

Here, the trial court did not make either of these findings in its order of August 30, 2022. Nor, for that matter, did it otherwise articulate from the bench, or anywhere else in the record before us, that it considered KRS 439.3106 when revoking Meador's probation. Precedent dictates that the trial court's failure

in this regard constitutes palpable error. *See, e.g.*, *Burnett v. Commonwealth*, 538

S.W.3d 322, 324-25 (Ky. App. 2017) (palpable error in failure to make findings

under KRS 439.3106 when voiding diversion); *Lainhart v. Commonwealth*, 534

S.W.3d 234, 238 (Ky. App. 2017) (palpable error in failure to make findings under

KRS 439.3106 when voiding diversion); *Walker v. Commonwealth*, 588 S.W.3d

453, 459 (Ky. App. 2019) (palpable error in failure to make findings under KRS

439.3106 when revoking probation); *Price v. Commonwealth*, 534 S.W.3d 805,

806 n.1 (Ky. App. 2017) (concluding defendant's counsel had preserved trial

court's failure to make findings under KRS 439.3106 when voiding diversion but

stating that the lack of findings would constitute palpable error if unpreserved).

Accordingly, we vacate the trial court's order revoking Meador's probation and

remand for further findings in conformity with KRS 439.3106.

## CONTEMPT

A. Factual Background and Procedural History

At Meador's revocation hearing, only one witness testified – the

probation officer. Thereafter, Meador's counsel informed the court she intended to

call no additional witnesses but wished to make a few closing arguments. Meador

then interrupted the proceedings to ask his counsel to broach the subject of his

eligibility for a substance abuse program. Counsel responded by advising it was

not in Meador's best interest to speak and, further, the subject of his eligibility was an argument she intended to make in closing.

The court then heard arguments from the Commonwealth and counsel. Thereafter, the court inquired of counsel and the probation officer whether they could confirm that Meador's new charges predated his probation. Meador interrupted the proceedings with another question, and the court admonished him to put his "hand down and be quiet." The officer testified that the dates of Meador's new offenses followed the date of the trial court's probation order. The parties briefly reasserted their closing arguments, and the court held from the bench that Meador's probation would be revoked.

Meador then asked to testify and to ask questions of both the probation officer and prosecutor. The court advised he could not do so because the hearing was over. Nevertheless, Meador proceeded to reassert much of what his counsel had argued on his behalf – that the probation officer was incorrect and that the new charges and convictions had occurred after the start date of his probation. The court, Meador's counsel, and the prosecutor assured Meador that if he later provided proof that the probation officer was incorrect about the dates of his conduct, the revocation could be set aside. However, Meador insisted he had additional questions. The court instructed him to save his questions for his attorney and again told him the hearing was over. Meador continued to interrupt

and complained that his attorney never answered her phone; whereupon the

following transpired:

> COURT:  We're finished.  (To counsel) You call him and talk to him and satisfy his questions, [defense counsel].  Okay?
>
> COUNSEL:  Yes, Your Honor.
>
> COURT:  Thank you very much.  Let's go to –
>
> MEADOR:  Fuck him.
>
> COURT:  What did you say?  You're held in – hey, sir – wait just a second there.  He's held in contempt for six months.  Put those headphones back on him.  Put those headphones back on him.
>
> OFFICER:  (From the video feed)  Your honor?
>
> COURT:  Yes?
>
> OFFICER:  You are not through with him?
>
> COURT:  No, I just, I just sentenced him to six months for what he said.  Just tell him he's sentenced for six months for contempt.
>
> OFFICER:  Alright.  Randy, you've been sentenced for six months for contempt for what you just did.
>
> COURT:  Okay.  Thank you very much.

B. Legal Analysis

We begin our analysis with a qualification.  The hearing footage did

not capture Meador's video feed from the jail; his offending language was faint;

and the trial court noted in its contempt order only that "[a]t the conclusion of the hearing, the Defendant had an outburst and used profanity directed at the Court." Accordingly, while we agree with the Commonwealth's interpretation of what Meador said, it is possible that what Meador represents, as set forth in his appellate brief, is also correct – that what he stated was "to the effect of 'That's fucked up[,]'" and that his statement was not a slight against the presiding judge but his critique of the court's refusal to allow him to continue asking questions.

Meador now argues the court's decision to sentence him to a term of six months' imprisonment must be either vacated or reversed. First, he suggests that because the trial court did not specify in its order what his offending language was, it may not have understood what he said, and if it did not understand what he said, it could not have properly found him in contempt.

As set forth in its order, however, the trial court understood what Meador said to be "profanity directed at the Court." For purposes of contempt, that is enough. If Meador wished for the court to make more detailed findings about his profanity, the onus was upon him to bring it "to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02." CR[7] 52.04. Meador failed to do so and, therefore, cannot complain about the lack of any such findings now. *Id.*

---

[7] Kentucky Rules of Civil Procedure.

Second, while he was held in *criminal* contempt, Meador suggests that his contempt may have been *indirect* as opposed to *direct* criminal contempt because he was not personally present in the courtroom, and because it could be reasonably inferred that he made his offending comment as he was walking away from the video equipment. Therefore, he asserts his sentence should be vacated because indirect criminal contempt requires at least a due process hearing, which did not occur. We disagree.

To be sure, Meador is correct in his assessment of the due process requirements associated with indirect criminal contempt:

> An individual who has committed indirect criminal contempt may be punished only in proceedings that satisfy due process. A court may not impose a fine greater than $500.00 and/or incarceration for more than six months except upon the unanimous verdict of a jury finding the individual guilty of contempt beyond a reasonable doubt.

*Newsome v. Commonwealth*, 35 S.W.3d 836, 839-840 (Ky. App. 2001) (citations and footnotes omitted). That said, Meador was still in the *presence* of the court when he made his offending statement, the court clearly heard him make it, and his profane comment was undisputedly directed at the court. That is enough for purposes of *direct* criminal contempt, which the court was at liberty to punish summarily absent any fact-finding. Without question, all the elements of Meador's

offense were within the personal knowledge of the court. *See Newsome*, 35 S.W.3d at 839 (defining "direct" criminal contempt).

Third, while acknowledging that contempt matters are within the trial court's discretion, Meador argues the court abused its discretion. In sum, he believes that his six-month term of imprisonment for contempt is unfair and unduly harsh because he did not physically injure anyone, and in his view, the court was overly sensitive. He adds that "one man's vulgarity is another's lyric." We disagree.

A court not only has the right but also the duty to protect its authority and dignity against contemptuous conduct. *Meyers v. Petrie*, 233 S.W.3d 212, 216 (Ky. App. 2007) (citation omitted). When a court exercises its contempt powers, it has nearly unlimited discretion. *Smith v. City of Loyall*, 702 S.W.2d 838, 839 (Ky. App. 1986). Consequently, we will not disturb a court's decision regarding contempt absent an abuse of discretion. "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Herein, neither stating "fuck him" nor "that's fucked up" could reasonably be construed as Meador attempting to impress the court with his lyrical stylings. Meador's multiple interjections that ultimately culminated with his final

explicit outburst interrupted the orderliness and decorum of the proceedings, willfully violated the orders of the court to remain quiet, and impugned the court's dignity.

It is irrelevant that Meador did not physically injure anyone. Physical injury is neither a prerequisite to a contempt finding nor a sentence of imprisonment for contempt.[8] Meador fails to cite any authority indicating that a six-month sentence for contempt in this type of circumstance qualifies as an abuse of discretion. To the contrary, in *Meskimen v. Commonwealth*, 435 S.W.3d 526 (Ky. 2013), our Supreme Court affirmed a six-month sentence for direct criminal contempt where the evidence demonstrated the appellant "commit[ed] acts of direct contempt when he resisted coming back into the courtroom upon the judge's request and furthermore, when he cursed at the judge upon returning to the courtroom." *Id*. at 537. In *West v. Commonwealth*,[9] the Supreme Court of Kentucky also affirmed a trial court's decision to sentence an appellant to a 179-day sentence and a 180-day sentence stemming from the following facts:

> At the conclusion of the final sentencing hearing, Appellant disrespectfully stated to the trial court, "I'll see you when the Court of Appeals overturns this." The trial court responded to this brash and indecorous discourtesy

---

[8] A six-month term of imprisonment is the maximum a trial court is authorized to sentence for direct contempt. *Newsome*, 35 S.W.3d at 840.

[9] *West v. Commonwealth*, No. 2011-SC-000629-MR, 2013 WL 3155835 (Ky. Jun. 20, 2013) (unpublished). An unpublished opinion may be considered as permitted by Kentucky Rules of Appellate Procedure (RAP) 41.

by holding him in contempt and imposing a 179-day contempt sentence. Appellant arrogantly responded by saying, "Make it 180." For this, the trial court held him in contempt for a second time, and imposed an additional 179-day sentence, to be served concurrently with the first. As Appellant was being escorted from the courtroom he continued to act disrespectfully and stated back, "OK, see you."

*Id.* at *8. In affirming the appellant's contempt sentences, the court explained:

The trial court found Appellant's conduct to be "unruly and argumentative," an assessment with which we agree. It is not the content of Appellant's remarks that merited the court's contempt, but the obviously disrespectful and indecorous means he chose to express it. His attitude challenged the trial judge's position of authority in the courtroom. Whether Appellant was sufficiently impertinent to deserve two 179-day jail sentences was a matter open to the trial court's sound discretion and we are persuaded that the exercise of that discretion was not abused. Therefore, we affirm the judgment of the trial court finding Appellant in contempt and we affirm the sentence thereby imposed.

*Id.* at *9.

In the instant matter, we similarly hold that whether Meador was sufficiently disrespectful to deserve a six-month jail sentence was a matter subject to the trial court's sound discretion and that the exercise of that discretion was not abused. Consequently, we affirm the order of the Cumberland Circuit Court holding Meador in contempt and affirm the sentence thereby imposed.

**CONCLUSION**

Therefore, and for the forgoing reasons, we AFFIRM IN PART, VACATE IN PART, AND REMAND for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jared Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky