RENDERED: MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1064-DG

KEITH ROSE                                              APPELLANT

v.             ON REVIEW FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 24-XX-00001

COMMONWEALTH OF KENTUCKY                   APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, L. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: A Letcher District Court jury found Keith Rose ("Rose")
guilty of an offense labeled as disorderly conduct in the first degree on the heading
of a jury instruction. There is no dispute that the evidence did not satisfy all the
elements of disorderly conduct in the first degree. Moreover, the instruction
labeled disorderly conduct in the first degree described conduct more akin to
disorderly conduct in the second degree, and even included the penalty range for

that offense. Rose appealed to the Letcher Circuit Court, which held that Rose had been convicted of disorderly conduct in the second degree—an offense for which he had not been charged. Given the obvious confusion, we granted Rose's petition for discretionary review. We also agreed to review the impact, if any, on Rose's resisting arrest conviction from unsolicited comments made by a police officer to the district court judge during a discussion of Rose's motion for a directed verdict. We conclude Rose could not properly have been convicted of disorderly conduct in the first or second degree, so we reverse the disorderly conviction but affirm Rose's conviction for resisting arrest.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

The parties do not meaningfully disagree about the essential facts underlying this vexing case. Therefore, we will relate only the crucial underlying facts and procedural history. Also, we have examined the parties' briefs but have determined the arguments and citations to authority presented therein which we do not discuss in this opinion lack relevance or are otherwise unnecessary for us to address. *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

In the aftermath of severe flooding, workers began cleaning out a creekbank in Letcher County, Kentucky. Rose owned property abutting that creek. When Rose saw the workers, he became irate and screamed at them. Rose's neighbor called the Fleming-Neon police. Chief Allen Bormes and Officer Dustin

Jackson responded. When the police arrived, they spoke to the workers on the opposite side of the creek from Rose's property. The police were satisfied that the cleanup crew had the right to perform the cleanup tasks, so Chief Bormes and Officer Jackson crossed the creek to speak to Rose on his property.

When the police arrived on his property, Rose met them and continued shouting. Officer Jackson told Rose to go into his home to calm down. Rose did not do so. Chief Bormes told Rose the workers had paperwork allowing them to perform the cleanup tasks, but Rose was not mollified. Even though there is no indication that a funeral or burial was then occurring nearby, a required element of disorderly conduct in the first degree, Chief Bormes told Rose that he was being arrested for disorderly conduct in the first degree ("disorderly conduct 1").[1] When Chief Bormes reached for Rose's hand to place him in handcuffs, Rose

---

[1] Disorderly conduct 1 is governed by Kentucky Revised Statute ("KRS") 525.055, which provides as follows:

(1) A person is guilty of disorderly conduct in the first degree when he or she:

(a) In a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof:

1. Engages in fighting or in violent, tumultuous, or threatening behavior;

2. Makes unreasonable noise; or

3. Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose; and

(b) Acts in a way described in paragraph (a) of this subsection within three hundred (300) feet of a:

"pushed away" from Chief Bormes and ran towards the creek.  Officer Jackson

deployed his taser on Rose soon after Rose began to run.

Rose was charged with disorderly conduct 1, fleeing or evading

police, resisting arrest,[2] and terroristic threatening in the third degree.  Those

---

1. Cemetery during a funeral or burial;

2. Funeral home during the viewing of a deceased person;

3. Funeral procession;

4. Funeral or memorial service; or

5. Building in which a funeral or memorial service is being conducted; and

(c) Acts in a way described in paragraph (a) of this subsection at any point in time between one (1) hour prior to the commencement of an event specified in paragraph (b) of this subsection and one (1) hour following its conclusion; and

(d) Knows that he or she is within three hundred (300) feet of an occasion described in paragraph (b) of this subsection.

(2) Disorderly conduct in the first degree is a Class A misdemeanor.

[2] Resisting arrest is governed by KRS 520.090, which provides:

(1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by:

(a) Using or threatening to use physical force or violence against the peace officer or another; or

(b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

(2) Resisting arrest is a Class A misdemeanor.

charges proceeded to a jury trial held in the Letcher District Court ("the trial court") in March 2024.

At the close of the Commonwealth's case-in-chief, and outside the presence of the jury, Rose moved for a directed verdict on all charges. The Commonwealth agreed to dismiss the terroristic threatening charge. Rose's oral motion for a directed verdict generically referred to a purported lack of evidence to support the disorderly conduct 1 charge. However, Rose's counsel did not specify a lack of evidence that Rose's actions occurred in association with funeral or burial proceedings. The Commonwealth's oral response likewise did not address that statutory element of disorderly conduct 1.

As to the motion for a directed verdict on the resisting arrest charge, Rose's counsel contended there was no evidence Rose had used or threatened to use physical force against a peace officer. The trial court then asked if Rose ever touched either Chief Bormes or Officer Jackson since Officer Jackson had vaguely testified that Rose had "pushed away" from Chief Bormes but had later testified that Rose had not pushed Chief Bormes. The trial court's question was apt because KRS 520.090(1)(a) requires the defendant to have used or threatened to use physical force or violence against a peace officer to be guilty of resisting arrest. The Commonwealth responded that whether Rose had made physical contact with a peace officer was a question for the jury.

-5-

Officer Jackson then volunteered that Rose had physically held his hands out and had pushed himself away from Chief Bormes. Rose's counsel did not object to Officer Jackson's interjection. The trial court dismissed the terroristic threatening charge but otherwise denied Rose's directed verdict motion.

Rose then presented the testimony of his wife, after which the defense rested. The trial court denied Rose's renewed motion for a directed verdict at the close of all the evidence.[3] Without discussing the funereal requirement of that offense, the trial court stated that the evidence was sufficient to allow a jury to convict Rose of disorderly conduct 1.

Rose did not object to the proposed jury instructions. Unfortunately, those instructions were plainly flawed, at least as to the disorderly conduct charge. Specifically, the heading of the instruction for disorderly conduct lists the offense as disorderly conduct 1. However, the substantive portion of the instruction seems to pertain to the offense of disorderly conduct in the second degree ("disorderly conduct 2").[4] For example, both the substantive elements of the offense and the

---

[3] The trial court's decision is depicted on the video footage before us, but Rose's renewed directed verdict motion is not.

[4] Disorderly conduct 2 is governed by KRS 525.060, which provides:

> (1) A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>
> (a) Engages in fighting or in violent, tumultuous, or threatening behavior;

penalty range pertain to disorderly conduct 2, and the instruction does not address the funereal element of disorderly conduct 1. The parties have not cited to where the Commonwealth successfully sought to amend the disorderly conduct 1 charge to a disorderly conduct 2 charge, so it is unclear why the body of the instruction instead describes conduct more akin to disorderly conduct 2. Adding to the confusion, the page in the instructions which required the jury to denote whether it found Rose guilty of disorderly conduct generically referred only to disorderly conduct without specifying a specific degree thereof.

The jury acquitted Rose of the fleeing and evading charge and found him guilty of resisting arrest and disorderly conduct. The jury set Rose's punishment at a total of $750 in fines, with no jail time.

After the trial court sentenced Rose in accordance with the jury's verdict, Rose filed an appeal to the Letcher Circuit Court. *See* KRS 23A.080(1) ("A direct appeal may be taken from District Court to Circuit Court from any final action of the District Court."). In his appeal, Rose raised two main issues. First,

---

(b) Makes unreasonable noise;

(c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or

(d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(2) Disorderly conduct in the second degree is a Class B misdemeanor.

he argued he was entitled to a directed verdict on the disorderly conduct 1 charge because there was insufficient evidence to satisfy the funereal element in KRS 525.055(1)(b). Second, Rose argued his conviction for resisting arrest must be reversed due to Officer Jackson's interjections during the discussion of Rose's motion for a directed verdict on that charge. During oral argument conducted by the circuit court, the Commonwealth admitted that the district court records showed that Rose had been convicted of disorderly conduct 1. The Commonwealth asserted the disorderly conduct 1 heading was a mere oversight.

The circuit court held that Rose "was mistakenly charged with Disorderly Conduct in the First Degree" but "both Appellant [Rose] and the Commonwealth presented their case as if the charge was Disorderly Conduct in the Second Degree . . . ." R. at 86. The circuit court noted, accurately, that the Commonwealth had not presented any evidence to satisfy the funeral-related elements of disorderly conduct 1.

Although Rose had framed the issue as an improper denial of his motion for a directed verdict, the circuit court analyzed Rose's disorderly conduct conviction as presenting only a jury instructional error. The circuit court concluded that the only error in the instructions was the heading which referred to disorderly conduct 1. According to the circuit court, "[i]f the word 'First' had been replaced with the word 'Second'" there would be no error whatsoever." *Id.* at 87.

The court noted that Rose's failure to object to the instruction meant he would be entitled to relief only if the instruction was a palpable error under RCr[5] 10.26.

The circuit court concluded there was not a palpable error because both Rose and the Commonwealth had conducted the trial as if Rose had been charged with disorderly conduct 2, the offense substantively addressed in the instruction at issue. Thus, the circuit court found that Rose had been found guilty of disorderly conduct 2 and remanded the matter to the district court to issue a new judgment finding that Rose had been found guilty of disorderly conduct 2, not disorderly conduct 1.

The circuit court also tersely declined to disturb Rose's resisting arrest conviction. The court noted that Rose had not objected to Officer Jackson's interjections, and held those comments were not heard by the jury and so they did not impact Rose's conviction.

We then granted Rose's request for discretionary review. We affirm Rose's resisting arrest conviction, although our rationale does not precisely match that utilized by the circuit court. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds."). However, we conclude there was insufficient evidence to convict Rose

---

[5] Kentucky Rules of Criminal Procedure.

of disorderly conduct 1 and it was improper to deem him as having been convicted of disorderly conduct 2 because he was not charged with that offense and disorderly conduct 2 is not a lesser-included offense of disorderly conduct 1.

## II. ANALYSIS

### A. Resisting Arrest

We begin with Rose's argument that his resisting arrest conviction was fatally tainted by Officer Jackson's interjections during the directed verdict discussion. As we perceive it, Rose raises two related, but distinct, issues. First, he argues he was entitled to a directed verdict. According to Rose, Officer Jackson's interjections, made outside the jury's presence, constitutes the only evidence that he used physical force to resist being arrested. Second, he contends the resisting arrest conviction must be reversed because of the taint stemming from Officer Jackson's interjections.

### 1. No Entitlement to a Directed Verdict

Rose preserved the directed verdict issue by specifically asserting in his motion that there was no evidence he used, or threatened to use, force against a peace officer to avoid being arrested. "On appeal, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (internal quotation marks and

citations omitted). We must view the evidence in the light most favorable to the Commonwealth when determining whether Rose should have received a directed verdict. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 35 (Ky. 2011).

To convict Rose of resisting arrest under these facts, the Commonwealth had to prove beyond a reasonable doubt that he: 1) used, or threatened to use, physical force or violence against Chief Bormes, 2) who Rose recognized was acting under his authority as a peace officer, 3) to prevent being arrested. *See* KRS 520.090(1)(a).

Construing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to show that Rose knew Chief Bormes was acting under his authority as a peace officer and that Rose intentionally attempted to prevent being arrested. The question is whether there was evidence Rose used physical force to try to thwart his arrest.[6]

Officer Jackson had testified in the jury's presence that Rose "pushed away" from Chief Bormes. Later, Officer Jackson testified that Rose had not pushed Chief Bormes, but had pushed away from him. Officer Jackson's testimony regarding whether Rose used physical force thus is hazy.

---

[6] Threatening to use physical force or violence against a peace officer would also suffice under KRS 520.090(1), but we need not address whether Rose's angry vow that the police would "find out" if they came onto his property–which Officer Jackson said he construed as a threat–satisfies the threat requirement since there is sufficient evidence to show Rose used physical force.

"Physical force" is not defined in KRS Chapter 520. However, it is statutorily defined elsewhere. Though not necessarily binding here, KRS 503.010(4) defines "physical force" for purposes of KRS Chapter 503 as "force used upon or directed toward the body of another person . . . ." Rose pushing away from Chief Bormes would satisfy that definition.

The act of pushing, including pushing away, from another human requires the pusher to contact some other object as one cannot push against or away from a person by pushing only thin air. Since there is no indication that Rose contacted any other object when he tried to "push away" from Chief Bormes (such as a nearby tree), the logical inference is that the act of pushing away caused Rose's body to come into forceful physical contact with Chief Bormes' body.

In sum, therefore, in the light most favorable to the Commonwealth, a reasonable juror could have concluded that Rose's pushing away from Chief Bormes involved Rose making some sort of forceful physical contact with Chief Bormes' body. Any forceful physical contact Rose intentionally made with Chief Bormes' body would constitute physical force. Accordingly, the trial court thus properly denied Rose's motion for a directed verdict on the resisting arrest charge.[7]

---

[7] The trial court should not have relied on the interjections as they were not evidence. Rose asserts the court nonetheless did, but he does not cite to anywhere specific where the trial court explicitly stated it was doing so. Even if the court improperly relied on the interjections, such reliance would not afford Rose relief because the ultimate decision to deny Rose's motion for directed verdict on the resisting arrest charge was correct since there was sufficient testimonial evidence presented to the jury to support submitting this charge to it.

**2. Officer Jackson's Interjections Are Not a Palpable Error**

The question thus becomes whether Officer Jackson's interjections otherwise entitle Rose to relief. We must review this issue only for palpable error because Rose did not timely object to the interjections.

We agree with the circuit court that Officer Jackson's statements could not have played any role in the jury's verdict because the jury never heard them. We also agree with Rose that the interjections were improper. Officer Jackson was not an attorney for the Commonwealth or for Rose. Accordingly, Officer Jackson had no role to play whatsoever in the determination of whether Rose was entitled to a directed verdict. Therefore, the interjections were improper.

But not every impropriety entitles a defendant to relief. "While a criminal defendant is guaranteed a fair trial[,] such a defendant is not guaranteed a perfect trial, free of any and all errors." *Johnson v. Commonwealth*, 718 S.W.3d 597, 622 (Ky. 2025) (internal quotation marks and citation omitted; brackets in *Johnson*). Since the issue is unpreserved, we must determine whether there is a substantial possibility that Officer Jackson's interjections changed the outcome of the trial, or otherwise caused a manifest injustice. *See, e.g.*, *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (holding that "what a palpable error analysis boils down to is whether the reviewing court believes there is a

substantial possibility that the result in the case would have been different without the error") (internal quotation marks and citations omitted).

We have already determined that Rose was not entitled to a directed verdict, regardless of Officer Jackson's interjections. Moreover, the statements could not possibly have impacted the jury's verdict since the jury never heard them. Thus, the interjections did not impact the outcome of the resisting arrest charge. Rose has otherwise not shown what specific prejudice he suffered from Officer Jackson's interjections. As a result, we conclude the interjections are not a palpable error as Rose has not shown how they impacted his substantial rights.

**B. Disorderly Conduct**

We now turn to Rose's argument that he was entitled to a directed verdict on the disorderly conduct 1 charge. According to our Supreme Court:

> in order to preserve an alleged directed verdict issue for appeal, <u>criminal defendants must</u>: (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and identify the particular charge the Commonwealth failed to prove, **and must identify the particular elements of that charge the Commonwealth failed to prove**.

*Ray*, 611 S.W.3d at 266 (underlining in *Ray*; bold font added).

Because Rose did not argue in the trial court that the Commonwealth had failed to satisfy the funereal element of disorderly conduct 1, we may only

review that argument under the palpable error standard in RCr 10.26. *See, e.g.*, *Williams v. Commonwealth*, 706 S.W.3d 177, 184 (Ky. 2024).

Even though the Commonwealth argued in its appellee brief that the issue was unpreserved, Rose has not explicitly requested palpable error review. Instead, he insists in his reply brief that "[p]reservation is plain." Appellant's Reply Brief, p. 2. It is not. *Ray*, 611 S.W.3d at 266.

"Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008).

Here, it is undisputed that there was no evidence presented at trial that Rose's conduct satisfied the funereal requirement of disorderly conduct 1. Our Supreme Court has recognized that "[t]he conviction of a defendant absent sufficient proof of an essential element of the charge is both a violation of due process and palpable error." *Williams*, 706 S.W.3d at 184. As such, it would be "a substantial miscarriage of justice," *Shepherd*, 251 S.W.3d at 316, for Rose to be convicted of disorderly conduct 1. Thus, this is one of the **extremely** rare instances where we shall conduct a palpable error review on our own accord. *See, e.g.*, *Murphy v. Commonwealth*, 509 S.W.3d 34, 42-47 (Ky. 2017) (conducting palpable error review despite no request for such review because allowing a

conviction to stand would be manifest injustice since there was insufficient evidence to satisfy an element of a charge for which the Appellant was convicted).

We readily conclude it would be a palpable error for Rose to be convicted of disorderly conduct 1. It is beyond reasonable dispute that there was no evidence presented to satisfy the funereal requirement of that offense.

However, it is not clear whether Rose was convicted of disorderly conduct 1 (the offense for which he was charged, the offense listed in the heading of the relevant jury instruction, and the offense shown in the district court's records) or disorderly conduct 2 (the offense the relevant jury instruction substantively addresses). The circuit court concluded that Rose was actually convicted of disorderly conduct 2. Moreover, the circuit court concluded it was permissible for Rose to be convicted of that offense.

It should never be difficult for an appellate court to instantly discern the precise offense for which an Appellant stands convicted. Regardless, under these particular facts, we conclude that Rose could not properly be convicted of disorderly conduct 1 because there was insufficient evidence to satisfy the funereal element thereof and that Rose could not properly be convicted of disorderly conduct 2 because he was never charged with that offense, and it is not a lesser-included offense of disorderly conduct 1.

To attempt to bring clarity to this murky situation, we first set forth the relevant legal principles. A defendant has a due process right to notice of the specific criminal charges levied against him or her, and may not be convicted of a crime for which he or she was not charged. *See, e.g.*, *Cole v. State of Ark.*, 333 U.S. 196, 201, 68 S. Ct. 514, 517, 92 L. Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired . . . . It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made.").

However, there is an important exception to the prohibition on being found guilty of an uncharged offense: lesser-included offenses. As the United States Supreme Court has also explained, a charging document provides a defendant adequate notice that he or she may be convicted of the offense contained in the charging document and any lesser-included offenses thereto. *Schmuck v. United States*, 489 U.S. 705, 717-18, 109 S. Ct. 1443, 1451-52, 103 L. Ed. 2d 734 (1989) (holding that using the elements test to discern whether an offense is a lesser-included offense of the one contained in the charging document, which is the test used by both the United States Supreme Court and Kentucky courts, "permits lesser offense instructions only in those cases where the indictment contains the

elements of both offenses **and thereby gives notice to the defendant that he may be convicted on either charge**.") (emphasis added).

We must therefore determine if disorderly conduct 2 is a lesser-included offense of disorderly conduct 1. If it is, then Rose's arguments fail because it is permissible for a defendant to be convicted of a lesser-included offense than the one contained in the charging document. But if it is not, then Rose may not be properly convicted of disorderly conduct 2 because he was not charged with that separate offense.

To make that lesser-included offense determination we must compare the elements of disorderly conduct 1 and disorderly conduct 2. In Kentucky, "a lesser included offense is one which includes proof of the same or fewer facts than for the primary offense." *Commonwealth v. Boone*, 653 S.W.3d 593, 597 (Ky. 2022). But "if the [alleged] lesser offense requires proof of a fact not required to prove the greater offense, then the [alleged] lesser offense is not included in the greater offense, but is simply a separate, uncharged offense." *Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000).

The elements of disorderly conduct 1 in KRS 525.055 are that Rose: 1) in a public place and with intent to cause public inconvenience, annoyance, or alarm, (or having wantonly created such a risk), 2) engaged in fighting or in violent, tumultuous, or threatening behavior, and 3) either made unreasonable

noise **_or_** created a hazardous or physically offensive condition by engaging in an act which served no legitimate purpose, and 4) performed those acts near in proximity and time to a funeral or burial. Obviously, disorderly conduct 1 contains an element not found in disorderly conduct 2—the funereal requirement. But greater offenses inherently contain elements not found in lesser-included offenses. The issue is whether disorderly conduct 2 contains requirements not found in disorderly conduct 1 since a lesser-included offense may not "require[] proof of a fact not required to prove the greater offense . . . ." *Colwell*, 37 S.W.3d at 726.

The elements of disorderly conduct 2 under KRS 525.060 are that Rose: 1) in a public place and with intent to cause public inconvenience, annoyance, or alarm (or having wantonly created such a risk), 2) engaged in fighting or in violent, tumultuous, or threatening behavior; **_and_** 3) made unreasonable noise, **_and_** 4) created a hazardous or physically offensive condition by any act that served no legitimate purpose.[8]

In 2006, the General Assembly enacted legislation which divided the former singular offense of disorderly conduct into disorderly conduct 1 and disorderly conduct 2. DISORDERLY CONDUCT—FUNERALS, 2006 Kentucky

---

[8] A person may alternately commit disorderly conduct 2 if he or she "[r]efuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency" instead of creating a hazardous or physically offensive condition by taking an act which serves no legitimate purpose. *See* KRS 525.060(1)(c)-(d). However, the failure to disperse method of committing disorderly conduct 2 is not at issue here.

Laws Ch. 50, §1-2 (SB 93). Prior to that legislation, KRS 525.060 permitted a person to be found guilty of disorderly conduct by engaging in fighting or violent, tumultuous, or threatening behavior OR making unreasonable noise OR refusing to obey an official order to disperse OR creating a hazardous or physically offensive condition by taking acts which served no legitimate purpose. The 2006 legislation removed two usages of the word "or" as follows (with highlighted portions representing additions to KRS 525.060 and strike through showing portions deleted from KRS 525.060):

> (1) A person is guilty of disorderly conduct ***in the second degree*** when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>
>> (a) Engages in fighting or in violent, tumultuous, or threatening behavior; ~~or~~
>>
>> (b) Makes unreasonable noise; ~~or~~
>>
>> (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or
>>
>> (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
>
> (2) Disorderly conduct ***in the second degree*** is a Class B misdemeanor.

2006 Kentucky Laws Ch. 50 §2 (SB 93).

We cannot ignore the General Assembly's decision to strike the usage of the word "or" after KRS 525.060(1)(a) and (b), while leaving the word "or" between KRS 525.060(1)(c) and KRS 525.060(1)(d).  As our Supreme Court has held when considering changes made over time to a statute, "a significant change in language is presumed to entail a change in meaning."  *Commonwealth ex rel. Beshear v. Commonwealth Office of the Governor ex rel. Bevin*, 498 S.W.3d 355, 376 (Ky. 2016) (internal quotation marks and citation omitted).

We conclude the General Assembly's decision to keep "or" between KRS 525.060(1)(c) and (1)(d) while removing "or" from between (1)(a) and (1)(b) and from between (1)(b) and (1)(c) means that a person must have committed the conduct described in KRS 525.060(1)(a) AND KRS 525.060(1)(b) AND either KRS 525.060(1)(c) or KRS 525.060(1)(d) to commit disorderly conduct 2.[9]

---

[9] Arguably, KRS 525.060 is ambiguous in light of common parlance.  Colloquially, persons do not use the word "or" between every optional choice.  For example, a typical question would be phrased as "do you want to eat a hamburger, a hot dog, or a grilled cheese sandwich?"  Even though there is no "or" between eating a hamburger and eating a hot dog, the person to whom the question is directed would not think he or she was being asked if they wanted to eat a hamburger AND a hot dog or to instead eat only a grilled cheese sandwich.

However, we deal here with a criminal statute, the violation of which subjects a person to being jailed.  "The rule of lenity requires any ambiguity in a statute to be resolved in favor of a criminal defendant."  *White v. Commonwealth*, 178 S.W.3d 470, 484 (Ky. 2005).  Thus, any ambiguities in the statute created by the removal of "or" between some of the subsections of KRS 525.060(1) in 2006 must be construed in Rose's favor.

Moreover, we cannot ignore the General Assembly's decision in 2006 to omit the word "or" from each subsection of KRS 525.060.  Instead, we must strive to give meaning to that conscious legislative decision.  Though the statute would have been clearer if the General Assembly had left "or" between each subsection or added the word "and" between the

-21-

The relevant statutory elements show that disorderly conduct 2 cannot be a lesser-included offense of disorderly conduct 1 because disorderly conduct 2 requires more elements than does disorderly conduct 1. In relevant part under these facts, disorderly conduct 2 required Rose to have made unreasonable noise AND to have created a hazardous or physically offensive condition by taking an act which served no legitimate purpose. By contrast, in relevant part disorderly conduct 1 only required Rose to have made unreasonable noise OR to have created a hazardous or physically offensive conduction which served no legitimate purpose. Because disorderly conduct 2 contains an additional requirement not found in disorderly conduct 1, disorderly conduct 2 is not a lesser-included offense of disorderly conduct 1. Instead, disorderly conduct 2 was a separate offense, for which Rose was not charged. Consequently, we disagree with the circuit court's conclusion that Rose could be convicted of disorderly conduct 2.[10]

---

subsections, the implication from deleting the word "or" between each subsection in KRS 525.060(1) is to eliminate the ability of a person to commit disorderly conduct 2 by taking acts which would satisfy any of the four subsections. Instead, a person must perform acts sufficient to satisfy the first two subsections and also commit acts to satisfy either of the final two subsections (which remain separated by the word "or"). If the General Assembly disagrees with our construction of the language it chose to use in KRS 525.060, it may amend the statute to eliminate the ambiguities and to thus more clearly express its intent.

[10] We disagree with the circuit court that the heading was the only mistake in the disorderly conduct jury instruction. Assuming the instruction was intended to address disorderly conduct 2, it was erroneous because it did not require the jury to find that the Commonwealth had proven all of the elements of KRS 525.060(1) beyond a reasonable doubt. For example, the instruction completely omits the "taking acts which served no legitimate purpose" prong. We need not examine further whether the erroneous instruction by itself entitled Rose to relief, despite his lack of objection, because Rose's disorderly conduct conviction must otherwise be reversed.

The end result is that Rose could not properly be convicted of disorderly conduct 1 because there was unquestionably insufficient evidence to satisfy all the elements of that charge. Rose could not, under these unique facts, be properly convicted of disorderly conduct 2 because he was never charged with that offense, and it is not a lesser-included offense of disorderly conduct 1. Other than the exception permitting a defendant to be convicted of a lesser-included offense, a defendant may not properly be convicted of a charge "that was never made." *Cole*, 333 U.S. at 201, 68 S. Ct. at 517. Nonetheless, that would be the actual, real-world impact of the Letcher Circuit Court's conclusion that Rose was properly found guilty of disorderly conduct 2.

The ultimate result is that Rose's disorderly conduct conviction—whether it was disorderly conduct 1 or disorderly conduct 2—cannot stand. As a result, we do not need to attempt to divine whether Rose was actually convicted of disorderly conduct 1 or disorderly conduct 2. We must reverse the Letcher Circuit Court and remand the matter to the Letcher District Court with instructions to enter an order dismissing Rose's disorderly conduct conviction.

### III. CONCLUSION

For the foregoing reasons, the Letcher Circuit Court's opinion affirming Keith Rose's conviction of resisting arrest is affirmed. The Letcher Circuit Court's opinion affirming Keith Rose's conviction for disorderly conduct

is reversed. This case is remanded to the Letcher District Court with instructions to enter an order setting aside Rose's disorderly conduct conviction.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Patrick T. Eavenson
Lexington, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky